IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03394-RMR-NRN

AQUA SIERRA INC., a Colorado corporation,

Plaintiff,

v.

COLORADO POND AND LAKE LLC, a Colorado LLC,
SILAS SIMS, individually and in his official capacity as owner/executive of Colorado Pond and Lake, LLC, and
PHILIP HIRSHMAN, individually and in his official capacity as owner/executive of Colorado Pond and Lake, LLC

Defendants.

## ORDER on DISCOVERY DISPUTE RELATING TO INVOICES FOR ALL CLIENTS OF THE DEFENDANT

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court as a follow-up to a discovery hearing held on September 10, 2024. *See* ECF Nos. 41, 42. At that hearing, the Court heard argument on a number of discovery issues, including Plaintiff's request for production of all invoices for all clients of Defendant Colorado Pond and Lake LLC ("CPL"). The Court found that the production of all invoices for all clients was overbroad. Instead, it ordered that CPL produce invoices for clients who had previously been served by Plaintiff Aqua Sierra Inc. ("ASI") and provide a list identifying all other clients by name. The Court did not at that time however, require the production of the invoices of the clients who had not previously been clients of ASI.

On October 8, 2024, the Court held a follow-up status conference where Plaintiff again raised the issue of the production of all invoices for all work done by CPL. At the Court's direction, ASI was permitted to file a brief in support of production of the invoices, and Defendants were permitted to file a response. *See* ECF No. 43. Specifically, ASI seeks the production of 596 CPL invoices issued to customers that CPL represented were only CPL customers and not previously ASI customers. ECF No. 44 at 3.

ASI argues that these invoices are "highly likely to lead to fact evidence essential to the proof of direct use and derivative use by all Defendants of the ASI Trade Secrets stolen by Defendant Silas Sims." *Id*. at 4. ASI claims that it must have the subject invoices "to calculate and prove damages" because each invoice has a "Product/Services" section, which includes a detailed description of the services actually performed. *Id* at 6. ASI says that without the details fully describing the actual services performed by CPL for the 229 customers of CPL whose invoices CPL has not produced, ASI has no way to identify direct or derivative use by Defendants of ASI's trade secrets for those 229 customers, making it impossible to calculate damages. *Id*.

As support for its claim that CPL actually stole trade secrets of ASI, ASI has provided evidence that CPL's principal Silas Sims (also a Defendant in this case) accepted a deferred judgment with respect to a charge of cybercrime (Felony 5), ECF No. 44-6, allegedly as a result of the unauthorized downloading of information from ASI's computer system. In connection with the deferred judgment, Mr. Silas also voluntarily and knowingly entered a plea of guilty to one count of cybercrime in violation of Colo. Rev. Stat. § 18-5.5-102(1)(e)(3)(a)(VI). *See* ECF No. 44-6 at 5. This provision

2

involves unauthorized access to a computer or computer network that results in loss or damage or cost of restoration or repair of more than five thousand dollars and less than twenty thousand dollars. Colo. Rev. Stat. § 18-5.5-102(1)(e)(3)(a)(VI). ASI has also provided an excerpt from the deposition of its computer expert, concluding that Mr. Sims accessed ASI's computer at a time when he was not authorized to do so. *See* ECF No. 44-8.

Defendants' response to ASI's request for production of *all* of CPL's invoices for *all* of CPL's customers is threefold. *See* ECF No. 47. First, Defendants emphasize that this is highly confidential and competitively sensitive information about CPL's clients and the specifics of the work being done. Second, Defendants emphasize that the Court already ruled on this request at the September 10, 2024 discovery hearing and resolved it by requiring the Defendants to produce the names of the clients reflected in the invoices, but not the invoices themselves. Defendants thus argue that this is, in effect, a motion for reconsideration, which may only be granted upon a showing of a manifest error of law or fact or newly discovered evidence. Defendants argue the prior ruling was not manifestly in error and there is no evidence that was not previously available that would justify the reconsideration of the prior discovery ruling. And finally, Defendants insist that there is no evidence presented that Defendants ever stole any trade secret from ASI, and without such evidence, this is nothing but a fishing expedition. ECF No. 47.

While it is true that the Court previously orally ruled on this issue, it was in the context of the Court's informal discovery dispute resolution procedure, which discourages formal and extensive briefing and encourages the parties to submit a short

3

statement of the discovery issue to the Court for expedited resolution at a hearing. *See* D.C.COLO.MJ VI (discovery disputes). In this instance, while the Court did preliminarily rule on the issue, at the follow-up October 8 status conference, the court allowed briefing (as it sometimes does when there are more complex issues at stake) and indicated that it would issue a "written order in due course." *See* ECF No. 43 at 1-2. By allowing briefing on an issue previously decided, the Court effectively told the parties it was willing to reconsider the question in light of the written arguments.

On whether ASI has shown that there has been any actual theft of trade secrets, the Court is not prepared to make a definitive determination one way or another, but there is enough in the record to conclude that the allegation of trade secret theft is not entirely frivolous. Defendant Sims pled guilty to a state court felony of cybercrime. ECF No. 44-4. Although Defendants say he only did so because it was too expensive to fight the charges, this is prima facie evidence that the Court can take into account. And there is the expert's testimony concluding that Mr. Sims unlawfully accessed the ASI computer. ECF No. 44-8. This is enough to conclude that the search for allegedly misappropriated secrets is not a complete "fishing expedition."

As to the arguable confidential nature of the information to be produced, it would undoubtedly be competitively useful for ASI to know who CPL is providing services for, and exactly what those services are. But it is also useful in the context of proving the claims in the case. If, for example, CPL is merely providing pond cleaning services—skimming the surface of ponds for leaves or other debris—then it is unlikely that any alleged trade secrets could be implicated or that ASI would be entitled to any damages associated with providing those services. But, if CPL is utilizing ASI's proprietary

4

chemical formulas for the treatment of ponds or pools, then that would be different. ASI's point, that it cannot establish damages (or the misappropriation of trade secrets) if it does not know what services are being provided to these other customers, is well taken.

In addition, the Court has already ordered the identification of these other clients. If ASI wanted to, it could issue subpoenas to all these clients for copies of the invoices that it now seeks from CPL. There is nothing privileged or secret about invoices sent by a commercial business to its customers that would preclude the use of this much more cumbersome, alternative discovery mechanism.

As explained in Rule 26(b), the scope of discovery is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." In this instance, I find that the requested invoices are not privileged and are relevant to ASI's claims in the case. I further find that there is no undue burden in producing the requested invoices and the request is not disproportionate to the needs of the case. Apparently, CPL has already collected the invoices, or could collect them without much effort. CPL has been able to produce the invoices for clients previously serviced by ASI. There is no objection that the production of all the invoices would be unduly burdensome.

To the extent that CPL is concerned that the information contained in the invoices could be used to ASI's competitive advantage and to the disadvantage of CPL, there is a protective order in the case (ECF No. 37) that provides that certain documents should be designated "Highly confidential--Attorneys' Eyes Only." This

should assure that ASI personnel do not get access to this competitively useful information or use it for non-litigation purposes.

For the foregoing reasons, the Court finds merit in ASI's request for the production of CPL invoices for all clients. Such documents must be produced within seven (7) business days from the date of this Order. The documents are to be produced with a "Highly Confidential--Attorneys' Eyes Only" designation.

Dated at Denver, Colorado this 4th day of November, 2024

_____
N. Reid Neureiter
United States Magistrate Judge