IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-3394-RMR-NRN

AQUA SIERRA, INC., a Colorado Corporation

Plaintiff,

v.

COLORADO POND AND LAKE, LLC, *et al.*,

Defendants.

---

### DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON AS EXPERT WITNESSES AT TRIAL PURSUANT TO FED. R. EVID. 702

---

Defendants Colorado Pond and Lake LLC, Silas Sims, Philip Hirshman, and Noel Browning, by and through their undersigned attorneys, hereby move to preclude Plaintiff from calling James Harrington as an expert witness at trial pursuant to Federal Rule of Evidence 702, and in support thereof state as follows:

### Certificate of Conferral

The undersigned defense counsel hereby certifies that he conferred with Plaintiff's counsel and that Plaintiff opposes this motion.

### Relevant Facts

Both Plaintiff Aqua Sierra, Inc. ("ASI") and Defendant Colorado Pond and Lake L.L.C. ("CPL") are businesses that provide a variety of services related to the management of bodies of water such as lakes and ponds. They are direct competitors in a market containing several other competing businesses, some of which are larger than both of the parties to this case. Defendants

Silas Sims ("Sims") and Philip Hirshman ("Hirshman") are the founders and co-owners of CPL, and Noel Browning ("Browning") is an employee of CPL. All three were formerly employed by ASI.

Plaintiff alleges that Defendant Sims, shortly before he left ASI, copied large amounts of sensitive and proprietary information from ASI's computer system, including customer lists and alleged but unspecified "trade secrets," deleted that information from ASI's system, and took that information with him. ASI further alleges that all of the Defendants used that information to their benefit in their business in competition with ASI. Sims categorically denies that he committed any of the aforesaid acts, and all of the Defendants deny that any of them ever took, possessed, or used any ASI proprietary information or trade secrets (to the extent that ASI has any actual trade secrets, which CPL denies) since leaving ASI or at any time since the founding of CPL. In short, all of the Defendants deny all of the allegations against them in their entirety.

ASI has brought claims against CPL primarily under state and federal Defend Trade secrets Acts and has produced to Defendants the report of James Harrington, CPA, CFF, CVA, who was retained by Plaintiff to provide opinions on ASI's alleged damages.[1] See attached Expert Report On Damages of James Harrington, CPA, CFF, CVA dated December 13, 2024 ("Harrington Report").[2] In his report, Mr. Harrington provides a purported "Listing of Documents and Information Considered" that lists what appears to be a large number of documents produced in discovery, but he identifies all but two of those documents *only* by ASI Bates stamp numbers with

---

[1] Although Plaintiff produced this report by Mr. Harrington, Plaintiff never filed any expert witness disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(A). Defendants have filed a separate and concurrent motion to preclude Plaintiff from calling *any* experts on this basis pursuant to Fed. R. Civ. P. 37(c)(1). Defendants file the present motion under Fed. R. Evid. 702 without waiving their position that Mr. Harrington has not actually been designated as an expert witness for trial by Plaintiff and that Plaintiff should not be allowed to call him at trial for that reason.

[2] All expert witness reports referenced herein were hand-delivered to the Court today and are the subject of a concurrent motion to have them filed under Level 2 Restriction.

no substantive identification of any of those documents.[3] (Harrington Report, Attachment B). In ASI's production of documents to Defendants in its initial disclosures and throughout discovery in this case, *ASI never Bates-stamped any documents*.[4] So, Mr. Harrington's "Listing of Documents and Information Considered" provided Defendants with no meaningful information as to any evidence that he reviewed or upon which he relied.[5]

Mr. Harrington begins his analysis by *assuming* that *all* of ASI's claims of liability against Defendants are true and accurate:

> My analysis assumes that ASI will prevail on its legal claims and be entitled to its damages. I have no opinions on legal issues including the liability issues in this matter. My opinions are directed to the damages issues outlined in this Report. All references to misappropriation, accused sales, or the like, are simply necessary assumptions in a damages study that the plaintiff will prevail on some or all its legal claims and be entitled to damages.

(Harrington Report at 9). He goes on to state that he is basing his opinions on the fact that "ASI has *alleged* the Defendants have misappropriated certain ASI trade secrets resulting in economic harm to ASI." (Harrington Report at 9; emphasis added).

Mr. Harrington then engages in his analysis of ASI's claim for unjust enrichment damages under the state and federal Defend Trade Secrets Acts. Mr. Harrington creates three categories of customers for purposes of calculating damages: (1) "Former ASI Customers Taken By CPL," (2) "New CPL Customers Obtained Using ASI Trade Secrets," and (3) "New CPL Customers

---

[3] The only two documents that he identifies by name as having been reviewed and considered were the "Amended Complaint" and "First Amended Complaint" herein, pleadings containing only Plaintiff's *allegations* against Defendants, which are not evidence in the case. (Harrington Report, Attachment B).

[4] The entirety of the documents produced in discovery by ASI is too voluminous to attach to this motion. However, Defendants will make arrangements to show the Court any or all of ASI's produced documents with no Bates stamp numbers upon request.

[5] Plaintiff's and Mr. Harrington's failure to disclose the evidence that Mr. Harrington reviewed and upon which he relied in formulating his opinions is the basis of a separate motion being filed currently with this one by Defendants to preclude Plaintiff from calling Mr. Harrington as an expert witness at trial pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii) and 37(c)(1).

Potentially Obtained Using ASI Trade Secrets." Nowhere in his report or in any of his charts does he disclose how he determined which CPL customers belonged in any of these categories.

Attached to Mr. Harrington's report are many pages of charts that supposedly show his calculations and work. However, nowhere in his report or charts is there any explanation as to what his basis was for placing any particular CPL customers in any given category. Furthermore, none of the charts cite to any evidentiary source from which he obtained the data or information shown in any of the charts.

Without citing *any* evidence whatsoever *anywhere* in his report or attached charts, Mr. Harrington concludes his report by stating his opinion that ASI is owed unjust enrichment damages totaling $1,738,136. (Harrington Report at 12).

Defendants retained economist Dr. Wade Roberts as an expert witness to rebut the report and opinions and conclusions of Mr. Harrington. Throughout his report, Dr. Roberts points out that Mr. Harrington failed to factor into his analysis the broader market in which ASI, CPL, and the other competitors in their market have been competing. (See attached Report of Findings: Forensic Economic Analysis of Claimed Damages of Wade C. Roberts, Ph.D., herein after "Roberts Report.") Dr. Roberts also pointed out several specific flaws in Mr. Harrington's methodology: (1) Mr. Harrington incorrectly assumed that all revenue from former ASI customers is directly attributable to CPL's alleged misappropriation without considering any alternative explanations such as competitive pricing strategies, service quality, and brand reputation – all of which influence customer decisions. (Roberts Report at 36). (2) Mr. Harrington failed to consider CPL's operating costs and erroneously assumed that *all* gross revenue from former ASI customers should be classified as unjust enrichment. (Roberts Report at 36-37). (3) Mr. Harrington's analysis

4

fails to account for normal competition and assumes that *all* profits made by CPL were the product of wrongfully "taking" ASI's customers. (Roberts Report at 38).

**Argument**

1. **Plaintiff Should Be Precluded From Calling James Harrington as an Expert Witness Pursuant to Fed. R. Evid. 702(b) Because He Provided No Evidentiary Foundation for Any of His Opinions and Conclusions.**

Under Fed. R. Evid. 702(b), in order for an expert witness' opinions to be admissible, they must be "based on sufficient facts or data." The trial judge serves as a gatekeeper and is tasked with "ensuring that an expert's testimony . . . rests on a reliable foundation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

In the present case, James Harrington's opinions rest on *no* evidentiary foundation whatsoever. He claims to offer expert opinions on ASI's damages resulting from alleged wrongful actions by Defendants, but although he provides numerous charts and mathematical calculations, he provides *no evidentiary sources* showing where he got his underlying data and how he placed various CPL customers into various categories in order to do those calculations.

As discussed above, Mr. Harrington provided a "Listing of Documents and Information Considered" in his Attachment B, but he listed all of the evidence that he reviewed and upon which he relied only by Bates stamp numbers *that Plaintiff did not place on any of the documents produced to Defendants*. So, neither Defendants nor their retained rebuttal expert, Dr. Wade Roberts, had any way to identify any of the evidence that Mr. Harrington reviewed or upon which he relied in his report.

Furthermore, the only place that it appears that Mr. Harrington might have utilized that evidence is in the charts attached to his report *as he does not reference any of it in his report itself*. Even in those charts he does not actually *cite* to any evidentiary documents. So, even if he had

5

actually named in his report any evidentiary documents that he reviewed, he still did not identify the *data* upon which he relied in preparing any of the charts that were the basis of his opinions and conclusions on damages.

Mr. Harrington also reveals in his actual report (as distinguished from his attached charts) that he did not use *any* actual evidence in the case to determine which ASI or CPL customers fell into any of the categories listed in any of the charts in his attachments. *It seems likely that he relied on ASI and/or ASI's attorneys to tell him which customers to put into these categories as no other source for these determinations is provided.*

Within the report itself (as opposed to the attachments), Mr. Harrington cites to *no actual evidence at all*. The following is a chart showing the issues he covers in the "Background" sections of his report and the sources that he cited for his information in those sections:

| Issue | Harrington's Source | Citation in Harrington Report |
|---|---|---|
| Nature of ASI's business | ASI's web site | "BACKGROUND – AQUA SIERRA, INC." - Page 6 |
| ASI's alleged "trade secrets" that were allegedly misappropriated by Defendants | ASI's *allegations* in its First Amended Complaint | "BACKGROUND – AQUA SIERRA, INC." - Pages 6-7 |
| Nature of CPL's business | CPL's web site and ASI's *allegations* in its First Amended Complaint | "BACKGROUND – COLORADO POND AND LAKE, LLC, et.al." - Pages 7-8 |
| Defendants Sims, Hirshman, and Browning personally | Web site LinkedIn and ASI's *allegations* in its First Amended Complaint | "BACKGROUND – COLORADO POND AND LAKE, LLC, et.al." - Page 8 |

Mr. Harrington begins his analysis by *assuming* that all of ASI's claims of liability against Defendants are true and accurate. He then creates three categories of customers for purposes of calculating damages: (1) "Former ASI Customers Taken By CPL," (2) "New CPL Customers Obtained Using ASI Trade Secrets," and (3) "New CPL Customers Potentially Obtained Using

6

ASI Trade Secrets." *Nowhere in his report or in any of his charts does he disclose how he determined which customers belonged in any of these categories.*

But that is not the only foundation that is lacking:

(1) "Former ASI Customers Taken By CPL": Mr. Harrington

- Fails to define the term "taken" and cites no evidence upon which he relies in formulating his conclusion that *any* customers were wrongfully "taken" by CPL;

- Fails to provide any foundation as to how he determined or learned *which* ASI customers were "taken" by CPL, how that determination was made, who made it (if it was not him), and what qualifications and foundation were the basis for such determination; and

- Fails to provide a foundation for his conclusion that these customers were wrongfully "taken" by CPL (and what CPL did that was allegedly wrongful) as opposed to legitimately earned in the open market.

(2) "New CPL Customers Obtained Using ASI Trade Secrets": Mr. Harrington

- Fails to identify what ASI claims to have been its trade secrets "used" by CPL to "obtain" any customers;

- Fails cite any evidence establishing that anything claimed by ASI to be a trade secret actually constitutes a trade secret under state or federal law;

- Fails to cite any evidence as to how any alleged trade secrets were allegedly "used" or misused by CPL;

- Fails to cite any evidence of how any of such determinations were made, who made them, and what the qualifications and foundation were for any such determinations; and

- Fails to explain how he determined *which* customers were "obtained" by CPL by such alleged use of alleged ASI trade secrets.

(3) "New CPL Customers Potentially Obtained Using ASI Trade Secrets": Mr. Harrington

- Fails to identify what ASI claims to have been its trade secrets "used" by CPL to "potentially obtain" any customers;

- Fails cite any evidence establishing that anything claimed by ASI to be a trade secret actually constitutes a trade secret under state or federal law;

7

- Fails to cite any evidence as to how any alleged trade secrets were allegedly "used" or misused by CPL;

- Fails to cite any evidence of how any of such determinations were made, who made them, and what the qualifications and foundation were for any such determinations; and

- Fails to explain how he determined *which* customers were "potentially obtained" by CPL by such alleged use of alleged ASI trade secrets.

- Fails to explain how his category of "potentially" obtained customers can possibly be anything but speculative.

In his attached charts, Mr. Harrington lists CPL customers into the aforesaid categories while providing no explanation as to how he determined that *any* CPL customers belong in any such categories or *any evidentiary basis* whatsoever for such determinations. His ultimate opinion that ASI is entitled to unjust enrichment damages of $1,738,136 is based on these entirely unexplained and unsubstantiated lists.

James Harrington's report provides *no evidentiary foundation for his opinions and conclusions whatsoever* and fails in every way to meet the requirements of Fed. R. Evid. 702(b). Accordingly, this Court should exercise its gatekeeping role under *Daubert* and preclude Plaintiff from calling Mr. Harrington as an expert witness at trial.

2. **Plaintiff Should Be Precluded From Calling James Harrington as an Expert Witness Pursuant to Fed. R. Evid. 702(c) Because His Opinions and Conclusions Are Not Rooted in Sound Methodology.**

Under Fed. R. Evid. 702(c), in order for an expert witness' opinions to be admissible, they must be "the product of reliable principles and methods." The trial judge is tasked with acting as gatekeeper and "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597 (1993). The Court should find an expert's opinions reliable only if the reasoning or methodology of the expert "is valid and can be applied

8

to the facts in issue." *Cruz v. City & Cty. of Denver*, Civil Action No. 21-cv-03388-KLM, 2023 WL 4073195 (D. Colo. June 20, 2023) (quoting *Daubert*, 509 U.S. at 592).

Mr. Harrington's methodology in his report is deeply flawed, and his opinions and conclusions are therefore rooted in flawed methodology and should not be permitted at trial. First, Mr. Harrington incorrectly assumes that *all* revenue from former ASI customers is directly attributable to CPL's alleged misappropriation without considering any alternative explanations such as competitive pricing strategies, service quality, and brand reputation – all of which influence customer decisions. As discussed in the report of CPL's retained expert economist, Dr. Wade Roberts, "customer migration is a normal feature of a competitive industry, where firms naturally gain and lose customers based on pricing, service offerings, and overall market positioning. ASI's own financial records indicate that per-customer revenue *increased* post-2021, undermining the claim that CPL's entry resulted in widespread customer losses." (Roberts Report at 36; emphasis added). Mr. Harrington utterly ignored these considerations and made the methodologically unsound assumption that *all* revenue from *all* former ASI customers had to be directly attributable *exclusively* to alleged misappropriation.

Second, Mr. Harrington failed to consider CPL's operating costs and erroneously assumed that all *gross* revenue from former ASI customers should be classified as unjust enrichment. As Dr. Roberts wrote in his report, "Standard economic damage models require that *net* profits (not gross revenue) serve as the basis for damage estimates. Companies experience significant costs in acquiring customers, marketing, and operational costs that should be deducted to arrive at a true measure of financial gains (assuming liability). The failure to consider these expenses grossly inflates the damages estimate and does not meet the standards of forensic economic analysis." (Roberts Report at 36-37; emphasis added).

9

Finally, Mr. Harrington's analysis fails to account for normal competition and assumes that *all* profits made by CPL were the product of wrongfully "taking" ASI's customers. Under the Defend Trade Secrets Act, a party seeking damages must demonstrate that its damages were caused *by the misappropriation. Cf. Gatti v. Granger Medical Clinic, P.C.*, 529 F.Supp.3d 1242 (D. Utah 2021) (interpreting Utah's Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, *et seq.*, which is substantially the same as the federal act). Mr. Harrington failed to make any such distinction in his analysis. The attached Roberts Report provides a thorough and detailed market analysis showing just how much essential market information was ignored by Mr. Harrington when he made the methodologically impermissible assumption that *all* of CPL's gross income constituted unjust enrichment.

Because James Harrington's methodology was deeply flawed and inconsistent with how unjust enrichment damages must be calculated under the Defend Trade Secrets Act, his opinions and conclusions fail to meet the requirements of Fed. R. Evid. 702(c). Accordingly, this Court should exercise its gatekeeping role under *Daubert* and preclude Plaintiff from calling Mr. Harrington as an expert witness at trial.

Wherefore, the foregoing considered, Defendants Colorado Pond and Lake LLC, Silas Sims, Philip Hirshman, and Noel Browning, by and through their undersigned attorneys, hereby move to preclude Plaintiff from calling James Harrington as an expert witness at trial pursuant to Federal Rule of Evidence 702.

Respectfully submitted on July 21, 2025.

> By: s/ Ken Falkenstein
> Ken Falkenstein, Atty. Reg. No. 52307
> Irwin Fraley, PLLC
> 8377 S. Revere Parkway, Suite 400
> Centennial, CO 80111
> Telephone: 303-999-9000
> FAX: 303-999-9001
> Email: kfalkenstein@coloradolawyers.com
> Attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

> s/ Ken Falkenstein
> Ken Falkenstein

11