# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-3394-RMR-NRN

AQUA SIERRA, INC., a Colorado Corporation

Plaintiff,

v.

COLORADO POND AND LAKE, LLC, *et al.*,

Defendants.

---

**DEFENDANTS' RESPONSE TO [84] PLAINTIFF'S MOTION TO STRIKE IN ITS ENTIRETY, OR PART THEREOF, DR. ROBERTS' REBUTTAL REPORT ON THE GROUNDS THAT IT FAILS THE REQUISITE ELEMENTS TO QUALIFY AS AN EXPERT REPORT AS REQUIRED BY FED. R. CIV. P. 26(a) AND FED. R. EVID. 702**

---

Defendants Colorado Pond and Lake LLC, Silas Sims, Philip Hirshman, and Noel Browning, by and through their undersigned attorneys, respond to [84] Plaintiff's Motion to Strike in Its Entirety, or Part Thereof, Dr. Roberts' Rebuttal Report on the Grounds That It Fails the Requisite Elements to Qualify as an Expert Report as Required by Fed. R. Civ. P. 26(A) and Fed. R. Evid. 702 ("Plaintiff's Motion to Strike") as follows:

**Relevant Facts**

Both Plaintiff Aqua Sierra, Inc. ("ASI") and Defendant Colorado Pond and Lake L.L.C. ("CPL") are businesses that provide a variety of services related to the management of bodies of water such as lakes and ponds. They are direct competitors in a market containing several other competing businesses, some of which are larger than both of the parties to this case. Defendants Silas Sims ("Sims") and Philip Hirshman ("Hirshman") are the founders and co-owners of CPL,

and Noel Browning ("Browning") is an employee of CPL. All three were formerly employed by ASI.

Plaintiff alleges that Defendant Sims, shortly before he left ASI, copied large amounts of sensitive and proprietary information from ASI's computer system, including customer lists and alleged but unspecified "trade secrets," deleted that information from ASI's system, and took that information with him. ASI further alleges that all of the Defendants used that information to their benefit in their business in competition with ASI. Sims categorically denies that he committed any of the aforesaid acts, and all of the Defendants deny that any of them ever took, possessed, or used any ASI proprietary information or trade secrets (to the extent that ASI has any actual trade secrets, which CPL denies) since leaving ASI or at any time since the founding of CPL. In short, all of the Defendants deny all of the allegations against them in their entirety.

ASI has brought claims against CPL primarily under state and federal Defend Trade Secrets Acts and has produced to Defendants the report of James Harrington, CPA, CFF, CVA, who was retained by Plaintiff to provide opinions on ASI's alleged damages. ("Harrington Report," previously filed as Docket No. 93). Although Plaintiff produced this *report* by Mr. Harrington to Defendants, Plaintiff never filed any expert witness *disclosures* pursuant to Fed. R. Civ. P. 26(a)(2)(A), and Defendants have filed a [81] motion to preclude Plaintiff from calling any experts on this basis pursuant to Fed. R. Civ. P. 26(a)(2)(A) and 37(c)(1).

With regard to the Harrington Report, it is important to understand that although Plaintiff's Motion to Strike repeatedly claims that the scope of Mr. Harrington's retention as Plaintiff's expert and of his report was limited to calculating Plaintiff's alleged "unjust enrichment" damages, and Plaintiff specifically relies on this characterization throughout that Motion, this claim is verifiably false. The scope of Mr. Harrington's retention was actually much broader.

In order to ascertain the actual scope of Mr. Harrington's retention and report, it must first be noted again that Plaintiff never filed a Rule 26(a)(2)(A) expert disclosure setting forth the issues on which Mr. Harrington would be expected to testify at trial. So, if Mr. Harrington may be considered a valid expert witness on behalf of Plaintiff in this case at all (which Defendants dispute), the *only* place from which the scope of the issues on which he would be expected to testify can only be ascertained is his report. In his report Mr. Harrington specifically stated that the scope of work for which he was retained was "to analyze damages issues in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter." (Harrington Report at 4 ¶ 5). In other words, Mr. Harrington was retained by Plaintiff to provide not just a calculation of Plaintiff's alleged "unjust enrichment" damages, as mischaracterized throughout Plaintiff's Motion to Strike, but more broadly to analyze damages issues in the case generally.

Mr. Harrington is a CPA and undertook his analysis of Plaintiff's alleged damages from a narrow accounting perspective applying accounting principles. However, as discussed in more detail in Defendants' aforesaid previously-filed [81] Rule 26 Motion, the Harrington Report failed to identify *any* evidence in support of *any* of Mr. Harrington's work, opinions, or conclusions.[1]

Although Plaintiff had not actually disclosed Mr. Harrington as an expert to testify at trial, in an excess of caution, Defendants retained forensic economist Wade Roberts, Ph.D. to do the same thing that Mr. Harrington stated that he was retained to do, i.e. "analyze damages issues in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter," and prepare a rebuttal report. Dr. Roberts did so and provided his analysis, opinions, and conclusions in a report that Defendants timely filed with their rebuttal expert witness disclosures on April 4, 2025. ("Roberts Report," previously filed as Docket No. 94).

---

[1] This was a separate and alternative basis stated in the [81] Rule 26 motion for striking Mr. Harrington as an expert witness in addition to Plaintiff's failure to disclose him as an expert witness at all.

In his report, Dr. Roberts applied well-established economic principles to show that Mr. Harrington's opinions and conclusions were unreliable because the assumptions on which he relied in reaching those opinions and conclusions failed to factor for market forces and considerations. Dr. Roberts' report also exposed blatant methodological errors in the Harrington Report that resulted in unreliable conclusions. For example, Dr. Roberts exposed Mr. Harrington's flawed assumption that *all* revenue from former ASI customers must be directly attributable to CPL's alleged misappropriation without considering any alternative explanations, such as competitive pricing strategies, service quality, and brand reputation – all of which influence customer decisions. (Roberts Report at 36). This and other flaws in Mr. Harrington's methodology raised by Dr. Roberts are discussed in more detail in Section 2 of the Argument in [82] Defendants' Motion to Preclude Plaintiff From Calling James Harrington as Expert Witnesses at Trial Pursuant to Fed. R. Evid. 702.

**Argument**

**I.    The Roberts Report Is a Proper Rebuttal Expert Report.**

Contrary to Plaintiff's assertion that the Roberts Report "in no way addresses or attacks [the Harrington Report's] methodology or theory in any way as required," the Roberts Report directly addresses both the issues addressed by Mr. Harrington and his methodology. With regard to the issues addressed in the Harrington Report, as discussed above, the scope of Mr. Harrington's retention and report was not limited to calculating Plaintiff's alleged "unjust enrichment" damages, as repeatedly mischaracterized in Plaintiff's Motion to Strike. Mr. Harrington was retained by Plaintiff, in his own words, "to analyze damages issues in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter." (Harrington Report at 4 ¶ 5). Defendants retained Dr. Roberts to rebut Mr. Harrington's opinions and conclusions on damages within the case generally in reliance

on that scope of work as stated in his report – especially in the absence of any Rule 26(a)(2)(A) disclosure from Plaintiff providing a statement of the issues on which he would be expected to testify at trial – and that was the scope of Dr. Roberts' rebuttal.

Contrary to the unsubstantiated argument in Plaintiff's Motion to Strike, there is no rule or law that requires a rebuttal expert to be in the same field of expertise or to apply the same methodology as the affirmative expert in order to attack that expert's conclusions and opinions on an issue. As Plaintiff correctly states in its Motion to Strike, under Rule 26(a), a rebuttal expert is "one whose testimony is 'intended solely to contradict or rebut evidence on the same *subject matter identified by another party*.'" Fed. R. Civ. P. 26(a)(2)(D)(ii). (Plaintiff's Motion to Strike at 5 ¶ 15; emphasis added). What matters is not the field of expertise or methodology used by the affirmative expert but rather whether the rebuttal expert, properly qualified in his *own* field of expertise, applies sound methodology within *that* field to reach sound and reliable opinions and conclusions that rebut the opinions and conclusions of the affirmative expert *on the issues assigned to be addressed by the opposing party*.

To illustrate the point using the method of *reductio ad absurdum*, if a plaintiff in a personal injury case designated a professional plumber to offer opinions on his medical damages, the defense would not be required to retain another plumber using plumbing methodology to rebut those opinions and conclusions. The defense could rebut those opinions both by challenging the qualifications and methodology of plaintiff's affirmative expert and by retaining a medical doctor to provide opinions and conclusions on plaintiff's medical damages to rebut those of the affirmative expert by applying medical methodology.

The issue addressed in Mr. Harrington's report, as stated by him, was damages issues generally in this case. While Plaintiff chose to retain a CPA who applied accounting principles to

engage in a very narrow analysis to reach his opinions and conclusions on damages in this case, neither that field of expertise nor that methodology were the only valid ones available to address issues of damages in this case. Defendants retained a forensic economist, which is at least as valid a field of expertise, to engage in a much broader analysis of damages in this case to rebut the opinions and conclusions of Mr. Harrington. In doing so, Dr. Roberts applied well-established and accepted economic principles to address those issues. In fact, as shown on Dr. Roberts' attached CV, he has been qualified by numerous courts across the country to provide forensic economic testimony on this subject.

It is also important to note that while Plaintiff had the burden to establish a precise dollar figure for its damages, Defendants did not have any duty to provide a precise alternative figure. Only Plaintiff has the burden of proof on that issue. Defendants' only burden in *rebuttal* was to *rebut and disprove* the opinions and conclusions of Plaintiff's expert. That could be and was done through Defendants' expert forensic economist, applying sound, well-established, and accepted economic principles and methodologies. In fact, nowhere in Plaintiff's Motion to Strike does Plaintiff ever suggest that the theories and principles applied by Dr. Roberts are not sound, established, and accepted within his field of forensic economics, so that issue is actually undisputed.

Contrary to Plaintiff's assertion that Dr. Roberts used "[b]old assertions to discredit Plaintiff's affirmative expert's report, that are not backed by relevant data, while ignoring relevant data relied upon by the affirmative expert" (Plaintiff's Motion to Strike at 7 ¶ 18), Dr. Roberts addressed and rebutted Mr. Harrington's opinions and conclusions on Plaintiff's alleged damages applying valid economic principles to the evidence, using market research and statistical analysis

applying methodologies commonly utilized in his field.[2] The evidence reviewed and relied upon by Dr. Roberts included

> the Complaint, Mr. Harrington's Expert Report (dated 12/13/2024), ASI Management Reports (2017-2024), CPL Profit and Loss Statements (2021-2024), CPL company invoices, Plaintiff's responses to CPL's first interrogatories to plaintiff, new business email requests, records of business requests via website, client reference records, customer voicemail records, and CPL Balance Sheets (2021-2024).

(Roberts Report at 1).

The economic principles utilized by Dr. Roberts obviously "were not mentioned in [the] Harrington Report" because Mr. Harrington, a CPA, applied accounting principles rather than economic principles in his analysis. (Plaintiff's Motion to Strike at 7 ¶ 19). However, Plaintiff is wrong in asserting that the economic principles applied by Dr. Roberts were unrelated to "the subject matter – unjust enrichment" because, as discussed above, the subject matter of the Harrington report, as asserted by Mr. Harrington himself, was not limited merely to calculating "unjust enrichment" damages but rather was "*to analyze damages issues* in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter." (Emphasis added.) As discussed above, a rebuttal expert need not use the same methodology or scientific principles as the affirmative expert to rebut that expert as long as his own methodology is sound within his own field and rebuts the opinions and conclusions of the affirmative expert *regarding the issues to be addressed*. Dr. Roberts properly applied established and accepted methodologies to do just that.

In doing so, Dr. Roberts showed that Mr. Harrington, in formulating his opinions and conclusions regarding Plaintiff's alleged damages, failed to factor in the overall market in which

---

[2] It is also worth reiterating that, contrary to Plaintiff's reference to "data relied upon by the affirmative expert," Mr. Harrington actually did not cite *any* evidence whatsoever as sources for *any* of his work anywhere in his report. So, once again, although Dr. Roberts did show in his report that he relied on evidence in this case, if he is nevertheless to be stricken on this basis, Mr. Harrington must also be stricken for the same reason.

the two parties to this case compete and the fact that these two parties are not the only two competitors in that market. Mr. Harrington formulated his opinions and conclusions based on the false *assumption* that any problems ASI had in its revenues and profits *necessarily* resulted from actions that he assumed had been made by CPL. Dr. Roberts rebutted those assumptions by Mr. Harrington by showing that ASI at all times was competing in a broader market with other competitors than CPL (most of whom actually were larger than both of the parties to this case) and that there were many alternative and more likely explanations for any damages alleged by ASI. In rebutting Mr. Harrington's flawed assumptions, Dr. Roberts demonstrated that Mr. Harrington's opinions and conclusions that relied on those flawed assumptions also were unreliable and deeply flawed.

Dr. Roberts' analysis and conclusions were a direct rebuttal to Mr. Harrington's analysis, opinions, and conclusions by showing data and factors that Mr. Harrington had completely failed to consider and that disproved the credibility and validity of his opinions and conclusions. Accordingly, the Roberts Report squarely met the requirements of Fed. R. Civ. P. 26(a)(2)(D)(ii) as an expert rebuttal report in that it "contradict[ed] or rebut[ted] evidence on the same subject matter identified" in the Harrington Report.

## II. The Roberts Report Met All of the Requirements of Fed. R. Evid. 702.

Plaintiff correctly cites Fed. R. Evid. 702's requirements for offering expert opinion testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods;
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

(Plaintiff's Motion to Strike at 9 ¶ 23). Plaintiff does not dispute that Dr. Roberts is qualified as an expert forensic economist, and indeed, his CV shows that he has been qualified by courts across the country to testify as such. Plaintiff also does not provide any basis to dispute that the economic theories and principles that Dr. Roberts used in his analysis are well-established and widely accepted in his field.

Plaintiff begins its argument on the issue of whether Dr. Roberts met the requirements of Fed. R. Evid. 702 by asserting that Dr. Roberts should be stricken because he lacks expertise in accounting principles to address Mr. Harrington's "unjust enrichment" calculations. This argument is a rehash of arguments made in the previous section of Plaintiff's Motion to Strike and fails for the same reasons: First, as discussed above, the scope of Mr. Harrington's assignment was not limited just to calculating "unjust enrichment" damages based on a specific set of data provided by Plaintiff. It was, as stated in his report, to analyze damages in the case generally. Second, again as discussed above, Defendants were not required to retain an expert in the same field using the same methodology as the affirmative expert to rebut his opinions and conclusions. As a forensic economist, Dr. Roberts was immensely qualified to address the damages issues in this case and rebut Mr. Harrington's opinions and conclusions, and he did do using well-established and accepted economic principles and methodologies. By applying these principles and methodologies, Dr. Roberts demonstrated that Mr. Harrington's approach and analysis was far too narrow and limited and failed to consider many alternative factors that could have and very likely did account for things that Mr. Harrington merely *assumed* were caused by Defendants and that this flawed approach led to his flawed opinions and conclusions.

Plaintiff next argues that Dr. Roberts did not consider in his analysis various facts in the case that Plaintiff characterizes, without explanation, as "very relevant" but that are *all* related solely to issues of liability and are therefore utterly irrelevant to any issues of Plaintiff's alleged damages (Plaintiff's Motion to Strike at 10 ¶ 26):

- "Roberts was not aware, and did not take into consideration in his opinion, that there was a criminal investigation into the facts of this case, criminal charges were filed concerning this case, and in which Defendant Sims made a plea of guilty" (Plaintiff's Motion to Strike at 10 ¶ 27).[3]

- "Roberts was not provided with any forensic reports showing the details of the misappropriation of trade secrets." (Plaintiff's Motion to Strike at 10 ¶ 28).

- "Roberts has never testified as to the existence of a trade secret before and is not qualified to do so by own admission." (Plaintiff's Motion to Strike at 10 ¶ 29).

All of these issues are relevant only to liability and are utterly irrelevant to any issues related to Plaintiff's alleged damages. *That is undoubtedly why Plaintiff's own expert, Mr. Harrington, also did not rely on any of these things in his own analysis and report.* If Dr. Roberts is to be struck as an expert for failing to factor these things into his analysis, Mr. Harrington also must be struck for the exact same reason.

Plaintiff's Motion to Strike also argues that "Roberts has never been involved in the aquatic management industry." (Plaintiff's Motion to Strike at 10 ¶ 29). Of course, it is not necessary for an expert on a business plaintiff's alleged damages to have had personal experience in that particular business' industry. *Indeed, Mr. Harrington's attached CV shows that he also has no experience in the aquatic management industry.* So, once again, if Dr. Roberts is to be struck as

---

[3] This is also irrelevant to issues of liability in this case, and Defendants intend to file a motion *in limine* to exclude all references to the prior criminal proceeding at trial. Throughout this case Plaintiff has sought to improperly "poison the well" by bringing up the prior criminal case, which Plaintiff knows or ought to know is irrelevant to this civil case because none of the charges to which Mr. Sims pled guilty are the same as any claims in this case, his plea of guilty was due solely to his lack of financial means to put on a defense and not due to any actual guilt for the charges against him, for which he has always maintained his innocence, and the charges ultimately were dismissed.

10

an expert for lack of personal experience in the parties' industry, Mr. Harrington also must be struck for the exact same reason.

Plaintiff goes on to allege that Dr. Roberts "failed to investigate the basic facts of this case." (Plaintiff's Motion to Strike at 10 ¶ 29). Plaintiff makes this allegation in the context of asserting that he should have thoroughly investigated the aforesaid issues that pertain only to liability and therefore are irrelevant to the issue of Plaintiff's alleged damages for which both experts were retained. Investigation into such irrelevant issues would be unwarranted and unneeded to perform the work for which both Mr. Harrington and Dr. Roberts were retained. Dr. Roberts did, however, thoroughly investigate the issues that *were* relevant to Plaintiff's alleged damages. As discussed above, this included reviewing "the Complaint, Mr. Harrington's Expert Report (dated 12/13/2024), ASI Management Reports (2017-2024), CPL Profit and Loss Statements (2021-2024), CPL company invoices, Plaintiff's responses to CPL's first interrogatories to plaintiff, new business email requests, records of business requests via website, client reference records, customer voicemail records, and CPL Balance Sheets (2021-2024)." (Roberts Report at 1). He also did substantial market research into the aquatic management industry in the market in which ASI and CPL compete, consistent with sound methodological forensic damages analysis practices in his field as described throughout his report.

Plaintiff next fixates on a single phrase from Dr. Roberts' deposition in which he stated that he took a "20,000-foot view" in his market analysis. Of course, this was a general description of his work in response to a single question in his deposition, and his report and opinions speak for themselves and must be evaluated for their own content and not based on one descriptive phrase cherry-picked by Plaintiff from Dr. Roberts' deposition. As discussed herein, Dr. Roberts' report applied sound methodology to the relevant facts of this case to reach sound and reliable opinions

and conclusions that effectively rebutted and disproved Mr. Harrington's opinions and conclusions regarding damages issues in this case, demonstrating that Mr. Harrington's opinions and conclusions were based on flawed assumptions that led to flawed and unreliable opinions and conclusions.

Plaintiff's final argument rehashes its previous argument that because Dr. Roberts is a forensic economist applying economic principles rather than an accountant applying accounting principles, his report is not a proper rebuttal. This argument has already been addressed and so will only be summarily readdressed here. Plaintiff first reasserts its false assertion that the scope of Mr. Harrington's retention was to calculate the amount of Plaintiff's alleged "unjust enrichment" damages. As shown above, Mr. Harrington was retained, in his own words, more broadly "to analyze damages issues in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter," and Dr. Roberts was retained to rebut Mr. Harrington's analysis, opinions, and conclusions on *that* subject.

Plaintiff attacks Dr. Roberts' approach for using economic principles rather than accounting principles, reviewing the market in which the two parties compete with several other businesses and applying various well-established economic theories and principles to analyze Plaintiff's alleged damages. (Plaintiff's Motion to Strike at 14-15 ¶ 38). As previously discussed, a rebuttal expert need not be of the same profession as the affirmative expert and need not use the same methodology to address the subject at hand. He must merely be qualified to rebut the affirmative expert's opinions and conclusions *on that subject*. Plaintiff does not challenge Dr. Roberts' qualifications as a forensic economist, and Dr. Roberts has been qualified by courts across the country to testify regarding business damages on numerous occasions. He is obviously qualified to do so in this case regardless of not being in the same field as Mr. Harrington, the

methodologies that he applied to refute Mr. Harrington's opinions and conclusions regarding damages in this case are well-established and recognized within the field of forensic economics, and their legitimacy within that field has not been challenged by Plaintiff. So, Dr. Roberts' report did indeed meet all of the requirements of Fed. R. Evid. 702 as a proper expert rebuttal report.

**Conclusion**

There is no dispute that Dr. Wade Roberts is a well-qualified forensic economist. He has been qualified by numerous courts across the country to testify on business damages and is well qualified to do so in this case. All of Dr. Roberts' opinions and conclusions were well-founded based on evidence in this case, market research conducted using sound methodology in his field, and sound analytical methodology in his field to properly and effectively rebut the analysis, opinions, and conclusions of James Harrington regarding the issues for which he was retained, i.e. "damages issues in the Aqua Sierra, Inc. v. Colorado Pond and Lake, LLC, *et.al.* matter." Accordingly, Plaintiff's Motion to Strike should be denied.

Respectfully submitted on August 11, 2025.

By: s/ Ken Falkenstein
Ken Falkenstein, Atty. Reg. No. 52307
Irwin Fraley, PLLC
8377 S. Revere Parkway, Suite 400
Centennial, CO 80111
Telephone: 303-999-9000
FAX: 303-999-9001
Email: kfalkenstein@coloradolawyers.com
Attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2025, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

s/ Ken Falkenstein
Ken Falkenstein