IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03394-RMR-NRN           Jury Trial Demanded

AQUA SIERRA, INC., a Colorado Corporation

Plaintiff,

v.

COLORADO POND AND LAKE, LLC, *et al.*,

Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM CALLING ANY EXPERT WITNESSES AT TRIAL OR, IN THE ALTERNATIVE, TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON, PURUSANT TO FED. R. CIV. P. 26(a)(2) AND 37(c)(1)**

_____

1.  Plaintiff Aqua Sierra, Inc. through its attorneys at the Law Offices of John P. Schmitz, P.C., hereby files the above captioned response (the "Response") to "Defendants' Motion to Preclude Plaintiff from Calling Any Expert Witnesses at Trial or, in the Alternative, to Preclude Plaintiff from Calling James Harrington, Pursuant to Fed. R. Civ. P. 26(a)(2) and 37(c)(1)" ("Defendants' Motion") and in support thereof hereby state as follows:

## Brief Background

2.  Plaintiff files this Response to Defendants' Motion and to preserve the filing deadline for responses to motions pursuant to D.C. COLO.L.CivR 7.1(d) and Fed. R. Civ. P. 6. However, Defendants' filings of two separate motions to strike, ECF Nos.

81 and 82, are not compliant in that Fed. R. Evid. R. 702 and Fed. R. Civ. P. 26(a) motions are to be one motion. Civ. Practice Standard 7.1A(a)(5). Defendants' non-compliance unjustly give's Defendants two bites at the apple. Also, of great importance, Defendants did not file the *complete* expert reports they are challenging, and in fact, omitted exhibits that are the very heart of the trade secrets misappropriation and destruction – Defendants' omission from filing Exhibit 2 and 4 of the ArcherHall Report show the chronological, systematic, misappropriation and destruction of Plaintiff's proprietary information in over 12,000 Excel spreadsheet rows. This omission is in violation of Civ. Practice Standard 7.1(C) and completely hobbles the Court from reviewing Defendants' motions in their entirety and context. Furthermore, on July 21, 2025, Defendants improperly filed the expert reports as a Level 2 Restriction – which was denied. *See* ECF No. 90. Defendants then filed a second Motion for Leave to Restrict on August 4, 2025, without leave of Court accompanied by ECF filings of incomplete expert reports as Level 1 Restriction on August 4, 2025. Defendants represented that second Motion to Restrict was unopposed. The second Motion for Leave to Restrict is opposed because Plaintiff's damages report pages 13-89, discussed *infra*, are Court ordered "Highly Confidential – Attorneys' Eyes Only.[1]" (ECF No. 60, 66). Plaintiff reserves the right to strike the defective filings ECF Nos. 81 and 82, as such filings to strike are non-conforming and omit required, significant portions of critical evidence.

      3.    Plaintiff filed the Amended Complaint on January 25, 2024. (ECF No. 5). The Proposed Scheduling Order was filed on May 13, 2024. (ECF No. 30). Plaintiff

---

[1] The designation as "Highly Confidential – Attorneys' Eyes Only" would necessitate a Level 2 Restriction and service on counsel as to the Level 2 Restriction being sought as Plaintiff so did in its filing of the expert report in ECF No. 85.

propounded its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C) to Defendants' counsel on May 14, 2024. Plaintiff delivered all relevant documents about which Defendant's now state "the entirety of the documents produced in discovery by ASI is too voluminous to attach to this motion." *See* pg. 3 of Defendants' Motion. Defendants filed their initial disclosure with only names of the people Defendants work with. Defendants filed no other initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C). Plaintiff has disclosed its testifying affirmative experts numerous times and in numerous ways throughout this case as discussed *infra*.

4. Plaintiff's Initial Disclosures included 303 pages of the criminal case record (*People of the State of Colorado vs. Silas Sims*, Criminal Action D0302021CR002380 District Court of Jefferson County, State of Colorado) from the criminal case arising out of the events complained in this matter. In 2021, Plaintiff hired a forensic computer analysist who issued a report called the Cyopsis report (the "Cyopsis Report")[2]. The Jefferson County Sherriff's Office used the Cyposis Report as part of its investigation into criminal charges of Cybercrime, Theft, and Theft/Trade Secrets committed against Plaintiff by Defendant Sims. The report states in part… "As explained further below, I believe that Mr. Sims purposefully destroyed potential evidence on two of the devices issued by the Client. Mr. Sims also downloaded data from and completed a mass deletion of data from the Client's OneDrive account. Furthermore, he copied a database file that contained proprietary/confidential information to an external drive, which did not belong to the Client. Cyopsis did not

---

[2] The Cyopsis Report was included in the open-source documentation of the Jefferson County Sherriff's Department's records and therefore not disclosed as "Confidential" pursuant to the Stipulated Protective Order (ECF No. 37).

have access to that external drive for investigation." (Respondent's Appx., p. 5 – Cyopsis Report.)

5. This case was filed as a trade secret case. The need for expert testimony has been apparent from the first demand letter sent by Plaintiff, which enumerated the claims of misappropriation of trade secrets and described the same. Included in Plaintiff's Initial Disclosures (disclosed on May 14, 2024, to Defendants' counsel) were the identification as expert witnesses: Mr. Bernard, author of the Cyopsis Report dated June 24, 2021; and Christian Mammarella, digital forensic expert as the testifying expert who worked for the successor company Vestige. (Respondent's Appx., p. 19 – Plaintiff's Initial Disclosure Coversheet). This was supplemented by a separate delivery to Defendant's counsel of the Supplemental Report by Christian Mammarella on August 5, 2024[3]. The original Initial Disclosure disclosed that as many as five expert witnesses may be called at trial to testify in certain areas.

6. On August 5, 2024, Plaintiff obtained Defendants' approval and agreement to take the partial deposition of Plaintiff's testifying forensic expert on September 6, 2024.[4] (Respondent's Appx. p. 22-26 – Notice of Deposition). The deposition was taken on September 6, 2024, after proper and timely written notice to Defendant's counsel and clearing the date approved by Defendant's counsel. *See supra*. Defendants' counsel, without explanation or communication, did not attend the

---

[3] The identified testifying witness, Mr. Christian Mammarella continued as Plaintiff's testifying expert with ArcherHall the successor company that purchased Vestige, and Vestige purchased Cyopsis.
[4] The partial deposition of Plaintiff's testifying digital forensic expert Mr. Christian Mammarella was agreed upon by Defendants' counsel to meet and discuss the marking of trade secrets per the Stipulated Protective Order (ECF No. 37) and also participate in the deposition testimony of the detailed theft and destruction of Plaintiff's proprietary information with Exhibits showing over 12,000 Excel spreadsheet rows in chronological order, of the systematic, unauthorized taking and destruction of Plaintiff's proprietary computer files.

4

deposition of Mr. Christian Mammarella even after agreeing to the taking of the deposition. (Respondent's Appx., p. 22-26 – Notice of Deposition).

7. On November 5, 2024, Plaintiff disclosed the name and purpose of Plaintiff's Affirmative Damages Expert, Mr. James Harrington CPA, CFF, CVA, Director at Matson, Driscol & Damico, LLP to Defendants' counsel per the requirement of the Stipulated Protective Order (the "SPO"). *See* ECF No. 37. (Respondent's Appx., p. 27-33 – Harrington Disclosure). The SPO provided this early disclosure to allow Defendants' counsel the opportunity to review Plaintiff's testifying expert before "Highly Confidential – Attorneys' Eyes Only" information was produced to the affirmative expert. Defendants did not respond or object to the disclosure and use of Mr. James Harrington as Plaintiff's affirmative testifying damages expert.

8. This case's docket is replete with arguments about the restrictive nature of Plaintiff's Affirmative Experts. *See* ECF Nos. 50-60. There are multiple motions, orders, and restricted documents filed and appearance and argument by counsel in discovery hearing, to ascertain the level of restriction of Plaintiff's affirmative experts' evidence. Defendants appear to rely solely on pretending they had no idea as to what experts were being offered or for what purposes, but Defendnats' counsel participated in the filings and appearances in this Court regarding the same and received the proper notices that are even above the requirements of Fed. R. Civ. P. 26(a)(2) as discussed *infra.* Defendants are pretending as if they did not have any notice and using such pretense for not taking any depositions of Plaintiff's representatives. Defendants did not take any depositions of Plaintiff's Affirmative Experts, even after being told of their availability and location. Defendants took almost no discovery whatsoever and now are

playing ostrich.  This strategy is not supported by case law or the rules of procedure and in fact specifically denounced as discussed *infra at* ¶¶ 15-24.

9. Per the Court's Order (ECF No. 43), on December 13, 2024, Plaintiff again timely disclosed and propounded the affirmative experts and reports of (a) Plaintiff's Affirmative Damages Expert, Mr. James Harrington CPA, CFF, CVA, Director at Matson, Driscol & Damico, LLP along with the damages report (the "MDD Report"), and (b) Plaintiff's Affirmative Forensic Expert and expert report of Mr. Christian Mammarella, EnCe, Senior Digital Forensic Examiner at ArcherHall (successor company to Vestige, the successor company to Cyopsis), pursuant to Fed. R. Civ. P. 26(a)(2)(D) and ECF No. 43.

10. The history of this case shows that there has been a constant stream of disclosures from the Plaintiff regarding Plaintiff's experts, their anticipated testimony, and the exhibits concerning trade secrets as discussed *infra* and *supra*.  Defendants have been provided with disclosures that Plaintiff would be calling expert testimony since May 2024.  The disclosures have been by way of written notice, motions and orders filed in this case, correspondence between counsel, depositions, and most importantly reports of the experts themselves.

## Arguments and Authorities

## Legal Standard Fed. R. Civ. P. 26(a)(2)

11. Fed. R. Civ. P. 26(a)(2) dictates the method and timing of the disclosure of expert testimony:

"(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
  (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
  (ii) the facts or data considered by the witness in forming them;
  (iii) any exhibits that will be used to summarize or support them;
  (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
  (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
  (vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
  (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
  (ii) a summary of the facts and opinions to which the witness is expected to testify.

*(D) Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
  (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
  (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2)(B)-(E).

*Walker v. Corizon Health, Inc.,* No. 17-2601-DDC-KGG, 2022 U.S. Dist. LEXIS 87257, at *4 (D. Kan. May 13, 2022) *See also Franklin v. United States*, No. 12-1167 KBM/CEG1, 2013 U.S. Dist. LEXIS 191344 (D.N.M. Dec. 19, 2013). "The purpose of expert disclosures is 'to eliminate surprise and provide opposing counsel with enough information . . . to prepare efficiently for deposition, any pretrial motions and trial.'" *Carbaugh v. Home Depot U.S.A., Inc*., No. 13-cv-02848-REB-MEH, 2014 U.S.

Dist. LEXIS 96578, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014) [*8] (*quoting Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121-22 (D. Colo. 2006)).

The expert reports of both Mr. Christian Mammarella and the report of Mr. James Harrington both comply with these requirements.

12. Defendants' counsel is mistaken that "disclosure" must be accomplished by the filing of a particular individual document. Disclosure pursuant to Fed. R. Civ. P. 26(a) refers to three types of disclosures that may take place in litigation.

13. Federal case law is clear on the mechanics of disclosure, and that the tendering of an expert report by a testifying expert pursuant to Fed. R. Civ. P. 26(a)(2)(B) subsumes disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(A). "The first point of analysis is the requirements for disclosure of witnesses under the Federal Rules of Civil Procedure. Under Federal Rule 26, potential witnesses are divided into three categories for purposes of disclosure. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004). First, for fact witnesses, the parties must disclose the name and contact information "of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses. . . ." Fed. R. Civ. P. 26(a)(1)(A). The parties must disclose this *first group* of potential witnesses "at or within 14 days" after the parties Rule 26(f) conference unless otherwise specified by the court. Fed. R. Civ. P. 26(a)(1)(C). Rule 26(a)(2)(A) governs disclosures of the *second group* of potential witnesses, pursuant to which the parties "must disclose the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(emphasis added). These witnesses are in addition to the fact witnesses who must be disclosed under Rule 26(a)(1). The *final group* includes those expert witnesses

8

who have been "retained or specially employed to provide expert testimony in the case," and the disclosure of such witnesses "must be accompanied by a written report" that has been "prepared and signed" by the expert witness. Fed. R. Civ. P. 26(a)(2)(B)." *McFerrin v. Allstate Property & Cas. Co.* 29 F. Supp. 924, 929-31 (E.D. Ky. 2014). Plaintiff has properly disclosed all the required information as shown in their respective reports, the Court's docket, numerous communications between counsel, and deposition testimony. There is a plethora of cases where disclosure under Fed. R. Civ. P. 26(a)(2)(A) is held to be insufficient if the witness is a testifying expert on a regular basis and a written report is required and tendered pursuant to Fed. R. Civ. P. 26(a)(2)(B) which report includes the requirements of Fed. R. Civ. P. 26(a)(2)(A). *See Scholl v. Pateder*, Civil Action No. 09-cv-02959-PAB-KLM, 2011 U.S. Dist. LEXIS 67031 (D. Colo. June 22, 2011); *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439 (D. Colo. 2000); *Ramirez v. Ultimate Concrete, LLC*, 2015 U.S. Dist. LEXIS 187402 (D.N.M. Feb. 10, 2015); *Nosewicz v. Janosko*, Civil Action No. 16-cv-00447-PAB-KLM, 2019 U.S. Dist. LEXIS 153242 (D. Colo. Aug. 19, 2019); *State Farm Mut. Auto. Ins. Co. v. Newmar Corp.*, 543 F. Supp. 3d 1079 (D.N.M. 2021).

## Argument

14. Defendants' position that disclosure of a testifying expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B) is not sufficient to disclose the anticipated testimony of an expert is an erroneous assumption. Defendants state that, "Merely producing reports does not satisfy the disclosure requirement of Rule 26(a)(2)(A) because the production of reports alone does not inform a party of the witnesses that the that party may call at trial." *See* Defendants' Motion at p.5. Defendants are mistaken, as this statement is not

backed by law or fact, and is indeed contrary to both. Defendants attempt to ignore the long-standing legal concept regarding expert reports that, "the reports are intended *not only to identify the expert witness, but also to set forth the substance of the direct examination.*" Fed. R. Civ. P. 26(a)(2) advisory committee note (1993). *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002) (emphasis added). *See also McFerrin v. Allstate Property & Cas. Co.* 29 F. Supp. 924, 929-31 (E.D. Ky. 2014). Hence, by the explanation in *Jacobsen*, requirements of Fed. R. Civ. P. 26(a)(2)(B) include the disclosure of the identity, subject matter of testimony as required by Fed. R. Civ. P. 26(a)(2)(A) and is a testifying expert. *Jacobsen* 287 F.3d at 953.

### A.  Disclosure as to Affirmative Digital Forensic Expert Mr. Christian Mammarella

15.  In this case, the Plaintiff has continually disclosed Plaintiff's intention to call as its testifying affirmative forensic computer expert witness, Mr. Christian Mammarella, from the company ArcherHall (the successor to Vestige, and Vestige the successor in interest to Cyopsis). Plaintiff has disclosed all relevant information required under Fed. R. Civ. P. 26(a)(2) as shown by the following evidence:

(a)  Initial Disclosures – May 14, 2024, Mr. Craig Bernard Cyopsis report delivered, named, and expected testimony;

(b)  Initial Disclosure – May 14, 2024, Mr. Christian Mammarella named, and subject of testimony; Respondent's Appx., p. 19 – Plaintiff's Initial Disclosure Coversheet.

(c)  Plaintiff delivered the Vestige Supplemental Report by Christian Mammarella to Defendants' counsel August 2, 2024.

10

(d) Discussion with Defendants' counsel and Notice of Deposition of Mr. Christian Mammarella on August 5, 2024, and subsequent no show of counsel to such partial deposition and discussion. (Respondent's Appx., p. 22-26 – Notice of Deposition).

(e) Deposition of Mr. Christian Mammarella on September 6, 2024.

(f) Plaintiff's responses to Defendant's interrogatories of October 15, 2024, repeatedly referred Defendants to the Cyposis and Vestige report by Mr. Christian Mammarella. Such responses by Plaintiff went unchallenged by Defendants. Hence, Defendants, through their actions and written notice, knew of the existence of Mr. Christian Mammarella as a testifying expert, had multiple reports, yet did nothing with the reports.

(g) Disclosure of Mr. Chirstian Mammarella per Court order: "Disclosure of Affirmative Experts: December 13, 2024." (ECF No. 43 at 2). Plaintiff did comply with this order as well and delivered Mr. Christian Mammarella's report on December 13, 2024.[5]

(h) Defendants Sims, CPL, Hirschman, and Browning were all questioned in their depositions about these reports and the ArcherHall Report tendered on December 13, 2024. Experts and their reports have been discussed in email, and in open Court, in the deposition of Defendant CPL

---

[5] Each of the foregoing reports have been delivered to Defendant's counsel. Each of the reports showed that Defendant Sims intentionally destroyed approximately 2,500 computer files, that Defendant Sims destroyed the Access database and removed client contacts from Outlook records; that Defendant Sims used 7 flash drives to remove proprietary material essential to Plaintiff's business and that he disregarded his duty under the non-disclosure agreement. Defendant Sims and the other Defendants then started CPL to utilize the purloined materials. The fact that Plaintiff had this incriminating material in expert reports has been aggressively demonstrated from the beginning of this civil case and back to the criminal case in 2021. To claim lack of knowledge of the testifying affirmative expert of Mr. Christian Mammarella rings hollow given the above chronological disclosures and agreement and no-show of the expert's deposition.

in its Fed. R. Civ. P. 30(b)(6) deposition by Defendant representative Phillip Hirshman on March 17, 2025; and continued on April 2, 2025, and in depositions of Defendant Sims, April 4, 2025 and April 22, 2025, and in the deposition of Defendant Noel Browning on April 15, 2025 – all of which were taken by Plaintiff and counsel for all Defendants was present.

16. It is nonsensical that Defendants would be able to prepare their respective rebuttal experts and receive the reports from these rebuttal experts if the Defendants did not disclose the identity of the affirmative testifying experts of Plaintiff, the subject matter of the testifying experts, the complete statement of the opinions of the witness and their reason, the underlying data considered, any exhibits that summarize or support the opinions, the experts qualifications and publication for the previous 10 years, and a list of all cases testified to in the previous 4 years and a statement of compensation. *See* Fed. R. Civ. P. 26(a)(2)(A)-(B). It is apparent Defendants had both actual notice of Plaintiff's testifying affirmative expert witnesses and the articulated requirements set forth by Fed. R. Civ. P. 26(a)(2)(A)-(B) or Defendants would not have been able to prepare their rebuttal experts or participate in discovery hearings, related correspondence, and motions.

17. Regarding the expert testimony of Chris Mammarella, as a testifying expert, the Defendants have had full benefit from disclosure of his name, his C.V, his previous expert testimony, had the opportunity to depose him and refused, have known of his testimony from the Initial Disclosures, counsel communications, and have received a supplemental report from him concerning his testimony.

## B. Disclosure as to Affirmative Damages Expert of James Harington, CPA, CFF, CVA

18. The expert testimony that is required for a damages expert was anticipated at the time of the Initial Disclosures. Plaintiff stated that they may call a statistician, a CPA, and an unnamed damage expert. (Respondent's Appx., p. 20 –Plaintiff's Initial Disclosure Coversheet). The Court ordered, "Disclosure of Affirmative Experts: December 13, 2024." (ECF No. 43 at 2). Mr. Harrington's Report and disclosure (the "MDD Report") was delivered on that date, together with the written disclosure and report of Chris Mammarella.

19. Mr. Harrington and his C.V. were disclosed to Defendants as Plaintiff's affirmative testifying damages expert per the SPO on November 5, 2024, as discussed *supra* at ¶ 7. (Respondent's Appx., p. 27-33 – Harrington Disclosure). The Harrington Disclosure is clear that he is an affirmative testifying expert testifying to damages suffered by Plaintiff. Again, Defendant did not object. Now, some nine months later, Defendants claim no knowledge of affirmative testifying expert of Mr. James Harrington.

20. Prior, and subsequently to the Court ordered December 13, 2024, affirmative expert disclosures, Defendants' counsel entered motion practice and appearance for argument as to the restrictive nature of the reports' contents, use of, and the requisite level of protection of the reports. *See* ECF Nos. 50-60. The timeframe was from October 2024 through January 2025. Defendants were able to articulate their concerns regarding testimony and to the information and exhibits included in the reports and especially as to the MDD Report culminating with the Court ordering pages 1-12 of the MDD report as "Confidential" and pages 13-89 as "Attorneys Eyes Only – Highly

Confidential". *See* ECF Nos. 43, 60. Defendants' statement that they were not aware of the disclosure or content is erroneous given the time and Court involvement on Plaintiff's disclosures tendered pursuant to the SPO, the Order in ECF No. 43, and Fed. R. Civ. P 26(a)(2).

21. By agreement of the parties, the MDD report was treated as "Highly Confidential – Attorney Eyes Only." There was extended discussion between counsel as to whether this report contained Protected trade secret material for *both* Plaintiff and Defendant CPL. In fact, counsel for Defendant proposed that most of the information in the report be redacted since it revealed trade secrets purportedly belonging to CPL. (Respondent's Appx., p. 34-40 – Counsel Emails Re: Contents of Reports). There is no pleading or claims that support any claim of Defendant CPL as its ownership of trade secrets. Following the Discovery Dispute Hearing of February 10, 2025, the Court ruled that the first 12 pages should be treated as "Confidential", and that the balance of the 89-page report should be treated as "Attorney Eyes Only". *See* ECF No. 60.

22. Defendant's claim that: (a) Harrington did not disclose the data he relied upon; (b) Harrington states that he relied upon Bates stamped documents; (c) ASI did not Bates stamp any documents; (d) Defendant's do not know upon what data Harrington relied upon and therefore the testimony should be stricken. Each of these arguments is evidentiarily erroneous.

23. MDD received all the documents that were sent to Defendants in the Initial Disclosure including (a) The entire upload to MDD reflected in the Bates Log. It shows that Bates stamped documents 1-2571 were sent and received by MDD, including all documents in the Initial Disclosure. (Respondent's Appx., p. 45-48 – Bates Log).

Defendants received the same Bates labeled documents. *Supra* at 47. (b) Harrington states that he relied upon the Bates stamped documents. (c) Counsel for Defendants entered a stipulation regarding a Bates numbering protocol for all documents produced. Defendants' counsel explicitly agreed to ASI using numbered Bates stamped numbering system. (Respondent's Appx., p. 41-43 – Bates Label Stipulation). (d) Defendants can easily track exactly what Mr. Harrington relied upon and there are no grounds to strike Mr. Harrington's report.

24. The MDD report states what documents, data and information considered in arriving at the opinions expressed on Attachment B. It relied upon stated Bates stamped documents and the Complaint. It relied upon Bates stamped 00001-00238-"ASI Financial Statements 2017-2024"; "ASI Financial P&L's Produced to CPL 2021-2024"; and Bates Stamped 01422-02577 – "CPL Invoices, Corporate and tax documents" and "CPL Financial Statements PL and Balance Sheets 2021-2024". All documents Produced by Plaintiff to Defendants in the Initial Disclosures was given to Mr. Harrington at MDD and all documents produced by CPL to Plaintiff were given to Mr. Harrington at MDD for their analysis. Plaintiff did Bates Stamp documents pursuant to the written stipulation between counsel.

25. Defendants wish the Court to impose Fed. R. Civ. P. 37 sanctions for Plaintiff's proper disclosure and forbid the expert testimony. Because there has been multiple, proper disclosure under Fed. R. Civ. P 26, no analysis of Rule 37 sanctions is necessary. Defendants cannot demonstrate prejudice, surprise, or bad faith, as the evidence shows multiple written disclosures and intense negotiations regarding the very nature of Plaintiff's affirmative experts and the timely disclosure of the same.

## Conclusion

26.	For undisclosed reasons Defendants have chosen: *Not* to depose the Plaintiff's representatives; *not* to take depositions of expert forensic computer witness Mr. Christian Mammarella; *not* to take the deposition of Mr. Harrington of MDD as a damages expert: *not* to engage in discovery concerning experts; *not* to engage in affirmative experts of their own, but rather have chosen to claim that because they feel disclosure was not done to their liking, that they would ignore the forensic reports that state how Defendants are liable for misappropriation and destruction of trade secrets, damages and claim that the expert testimony is inadmissible.  For the above articulated reasons, Plaintiff moves this Court to deny Defendants' above captioned Motion.

Respectfully submitted on August 11, 2025.

*s/ John Patrick Schmitz, Esq.*
John Patrick Schmitz, Esq.
Law Offices of John P. Schmitz, P.C.
1001 Bannock Street, Suite #426
Denver, CO 80204
Telephone: (303) 219-9430
E-mail: john@schmitzlegal.com
Attorney for Plaintiff

## Certificate of Service

I hereby certify that on August 11, 2025, I filed the foregoing: Plaintiff Aqua Sierra, Inc.'s PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM CALLING ANY EXPERT WITNESSES AT TRIAL OR, IN THE ALTERNATIVE, TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON, PURUSANT TO FED. R. CIV. P. 26(a)(2) AND 37(c)(1) via CM/ECF which forwarded the same to the following Counsel for all Defendants at the following email address.

kfalkenstein@coloradolawyers.com

    Ken Falkenstein, Esq.
    Irwin Fraley, PLLC
    6377 S. Revere Parkway, Suite 400
    Centennial, Colorado 80111 USA
    303-999-9000 Tel
    303-999-9001 Fax
    Attorney for all Defendants

*s/ John Patrick Schmitz, Esq.*
John Patrick Schmitz, Esq.
Law Offices of John P. Schmitz, P.C.
1001 Bannock Street, Suite #426
Denver, CO 80204
Telephone: (303) 219-9430