# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03394-RMR-NRN                              Jury Trial Demanded

AQUA SIERRA, INC., a Colorado Corporation

Plaintiff,

v.

COLORADO POND AND LAKE, LLC, *et al.*,

Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON AS EXPERT WITNESS AT TRIAL PURSUANT TO FED. R. EVID. 702**
_____

1.      Plaintiff Aqua Sierra, Inc. through its attorneys at the Law Offices of John P. Schmitz, P.C., hereby files the above captioned response (the "Response") to "Defendants' Motion to Preclude Plaintiff from Calling James Harrington as Expert Witness at Trial Pursuant to Fed. R. Evid. 702" ("Defendants' Motion") and in support thereof hereby state as follows:

## Brief Background

2.      Plaintiff files this Response to Defendants' Motion and to preserve the filing deadline for responses to motions pursuant to D.C. COLO.L.CivR 7.1(d) and Fed. R. Civ. P. 6.  However, Defendants' filings of *two sperate motions to strike*, ECF Nos. 81 and 82, are not compliant in that Fed. R. Evid. R. 702 and Fed. R. Civ. P. 26(a) motions are to be one motion.  Civ. Practice Standard 7.1A(a)(5).  Defendants' non-compliance

unjustly give's Defendants two bites at the apple.  Also, of great importance, Defendants did not file the *complete* expert reports they are challenging, and in fact, omitted exhibits that are the very heart of the trade secrets misappropriation and destruction – Defendants' omission from filing Exhibit 2 and 4 of the ArcherHall Report show the chronological, systematic, misappropriation and destruction of Plaintiff's proprietary information in over 12,000 Excel spreadsheet rows.  This omission is in violation of Civ. Practice Standard 7.1(C) and completely hobbles the Court from reviewing Defendants' motions in their entirety and context.   Furthermore, on July 21, 2025, Defendants improperly filed the expert reports as a Level 2 Restriction – which was denied.  *See* ECF No. 90.   Defendants then filed a second Motion for Leave to Restrict on August 4, 2025, without leave of Court accompanied by ECF filings of incomplete expert reports as Level 1 Restriction on August 4, 2025.  Defendants represented that second Motion to Restrict was unopposed.  The second Motion for Leave to Restrict is opposed because Plaintiff's damages report pages 13-89, are Court ordered "Highly Confidential – Attorneys' Eyes Only.[1]"  (ECF No. 60, 66).  Plaintiff reserves the right to strike the defective filings ECF Nos. 81 and 82, as such filings to strike are non-conforming and omit required, significant portions of critical evidence.

       3.      Plaintiff filed the Amended Complaint on January 25, 2024.  (ECF No. 5). The Proposed Scheduling Order was filed on May 13, 2024.  (ECF No. 30).  Plaintiff propounded its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C) to Defendants' counsel on May 14, 2024.  Plaintiff delivered all relevant documents regarding its experts and disclosed its testifying affirmative experts numerous times and in numerous

---

[1] The designation as "Highly Confidential – Attorneys' Eyes Only" would necessitate a Level 2 Restriction and independent service on counsel as to the Level 2 Restriction being sought as Plaintiff so did in its filing of the expert report in ECF No. 85.

ways throughout this case as argued at length in "Plaintiff's Response to Defendants' Motion to Preclude from Calling Any Expert witness at Trial or, in the Alternative, to Preclude Plaintiff from Calling James Harrington, Pursuant to Fed. R. Civ. P. 26(a)(a)(2) and 37(c)(1).[2]"

4. Plaintiff's Initial Disclosures included 303 pages of the criminal case record (*People of the State of Colorado vs. Silas Sims*, Criminal Action D0302021CR002380 District Court of Jefferson County, State of Colorado) from the criminal case arising out of the events complained in this matter. In 2021, Plaintiff hired a forensic computer analysist who issued a report called the Cyopsis report (the "Cyopsis Report"). The Jefferson County Sherriff's Office used the Cyposis Report as part of its investigation into criminal charges of Cybercrime, Theft, and Theft/Trade Secrets committed against Plaintiff by Defendant Sims. The report states in part… "As explained further below, I believe that Mr. Sims purposefully destroyed potential evidence on two of the devices issued by the Client. Mr. Sims also downloaded data from and completed a mass deletion of data from the Client's OneDrive account. Furthermore, he copied a database file that contained proprietary/confidential information to an external drive, which did not belong to the Client. Cyopsis did not have access to that external drive for investigation."

5. This case was filed as a trade secret case. The need for expert testimony has been apparent from the first demand letter sent by Plaintiff, which enumerated the claims of misappropriation of trade secrets and described the same. Included in Plaintiff's Initial Disclosures (disclosed on May 14, 2024, to Defendants' counsel) were

---

[2] Plaintiff has argued disclosure in its separate response to the non-conforming Defendants' separate motion under Fed. Civ. P. R. 26(a)(2) and 37(c)(1).

the identification as an expert a damages expert, CPA, and statistician.  (Respondent's Appx., p. 9 – Plaintiff's Initial Disclosure Coversheet).

6. On November 5, 2024, Plaintiff disclosed the name and purpose of Plaintiff's Affirmative Damages Expert, Mr. James Harrington CPA, CFF, CVA, Director at Matson, Driscol & Damico, LLP to Defendants' counsel per the requirement of the Stipulated Protective Order (the "SPO").  *See* ECF No. 37.  (Respondent's Appx., p. 11-17 – Harrington Disclosure).  The SPO provided this early disclosure to allow Defendants' counsel the opportunity to review Plaintiff's testifying expert before "Highly Confidential – Attorneys' Eyes Only" information was produced to the affirmative expert.  Defendants did not respond or object to the disclosure and use of Mr. James Harrington as Plaintiff's affirmative testifying damages expert.  This case's docket is replete with arguments about the restrictive nature of Plaintiff's Affirmative Experts.  *See* ECF Nos. 50-60.

7. Per the Court's Order (ECF No. 43), on December 13, 2024, Plaintiff again timely disclosed and propounded the affirmative experts and reports of Plaintiff's Affirmative Damages Expert, Mr. James Harrington CPA, CFF, CVA, Director at Matson, Driscol & Damico, LLP along with the damages report (the "MDD Report"), and pursuant to Fed. R. Civ. P. 26(a)(2)(D),  Fed. R. Civ. P. 26(a)(2)(B), and ECF No. 43.

## Arguments and Authorities

8. Defendants have moved to preclude the expert testimony of Mr. James Harrington on the following grounds:

(a) The MDD report fails because Mr. Harrington examined Bates stamped documents and Counsel states Plaintiff did not Bates stamp any documents;

4

(b) That the affirmative testifying expert Mr. James Harrington wrongfully assumed liability;

(c) That the MDD Report incorrectly categorized damages into three groups of damages;

(d) That the MDD Report is based upon a faulty methodology.

The above referenced complaints by Defendants are factually and legally incorrect as discussed below.

## Arguments and Authorities

### Legal Standard Fed. R. Evid 702

9. Fed. R. Evid. 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."
> 
> See Fed. R. Evid. 702.

10. It is well established that trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only relevant, but also reliable. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147152 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 58889 (1993). To fulfill that gatekeeper function, the United States District Court for the Tenth Circuit ("Tenth Circuit") must conduct a two-part inquiry. First, the court considers whether the expert's proffered testimony has a reliable basis in the knowledge and

5

experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.,* 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Butler v. A.O. Smith Corp.,* 400 F.3d 1227, 123233 (10th Cir. 2004)). Second, the court considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id.* The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements by a preponderance of the evidence. *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

11. Defendants' instant Motion is incorrect as to their assumptions of law that Defendants cite and incorrect regarding lack of facts and evidence relied upon by Mr. James Harrington in the MDD Report, that indeed comports with Fed. R. Evid. 702. Defendants Motion constitutes mere conjecture with no evidence presented and in fact omission of evidence as discussed *infra.*

## Argument

### A. Mr. Harrington Disclosed All Relevant Data and Evidence Properly Relied Upon for the Calculations and Conclusions in the MDD Report.

12. Defendants seem to go to great length as to Bates labeling,to confuse the argument. MDD relied upon comparative financials of both parties, and comparative customer lists. MDD received all the documents that were sent to Defendants in the Initial Disclosure including (a) The entire upload to MDD reflected in the Bates Log. It shows that Bates stamped documents 1-2571 were sent and received by MDD,

including all documents in the Initial Disclosure. (Respondent's Appx., p. 18-21 – Bates Log). Defendants received all documents MDD received. (b) Harrington states that he relied upon the Bates stamped documents. (c) Counsel for Defendants entered a stipulation regarding a Bates numbering protocol for all documents produced. Defendants' counsel explicitly agreed to ASI using numbered Bates stamped numbering system. (Respondent's Appx., p. 22-25 – Bates Label Stipulation). (d) Defendants can easily track exactly what Mr. Harrington relied upon and there are no grounds to strike Mr. Harrington's report.

      13.     The MDD Report states what documents, data and information considered in arriving at the opinions are expressed in Attachment B. It relied upon stated Bates stamped documents and the Complaint. It relied upon Bates stamped 00001-00238- "ASI Financial Statements 2017-2024"; "ASI Financial P&L's Produced to CPL 2021-2024"; and Bates Stamped 01422-02577 – "CPL Invoices, Corporate and tax documents" and "CPL Financial Statements PL and Balance Sheets 2021-2024". All documents produced by Plaintiff to Defendants in the Initial Disclosures were given to Mr. James Harrington at MDD and all documents produced by CPL to Plaintiff were given to Mr. James Harrington at MDD for their analysis. Plaintiff did Bates Stamp documents pursuant to the written stipulation between counsel. The MDD Report articulated with particularity, the documents and data relied upon that were provided to Defendants, or that Defendants provided to Plaintiff. The MDD Report incorporates all such documents and evidence that it relied upon, thus dispelling the idea that Defendants claim there was no "evidentiary foundation." Defendants' Motion at p. 5.

Defendants' Motion excludes in its table all the financial information discussed above and merely ignores this very important fact. Defendants' Motion at p. 6.

14. The MDD Report goes into great lengths to explain its data, what it relied upon, and financial documents used for its unjust enrichment damages' calculations, and how it viewed the financial conclusions. All the documents relied upon by Mr. James Harrington are certainly foundational and helpful to the trier of fact and are produced by both Plaintiff and Defendants. Defendants' counsel states that the facts were only in the graphs and not in the narrative. That is not the case, and the report states that "*The attachments are part of this Report whether or not discussed directly in the report*." MDD Report at p. 5.

15. Furthermore, dispelling Defendants' claim of lack of underlying data and evidence, this case's docket is replete with arguments about the nature of the data and evidence contained in the MDD report. Defendants' resisted disclosure of approximate 600 detailed invoices of Defendant CPL were subject to oral argument, briefing, and Court Order to produce. *See* ECF No. 53. These approximate 600 detailed invoices [3] were relied upon and stated as such by MDD. There are multiple motions, orders, and restricted documents filed and appearance and argument by counsel in discovery hearing, to ascertain the level of restriction of Plaintiff's affirmative experts' evidence and documents. *See* ECF Nos. 50-60. Thus, Defendants' ignoring and claiming lack of underlying foundational evidence, fails.

---

[3] Defendants' approximate 600 invoices ordered disclosed to Plaintiff under "Highly Confidential – Attorneys' Eyes Only" contained the names of customers, detailed services provided, addresses, and amounts billed, all of which were used and relied upon in the MDD report in the determination of Plaintiff's damages.

### B.      Defendants are Incorrect in Their Assumption that the Mr. James Harrington Should not Assume Liability in the Affirmative MDD Damages Report.

16.     Defendants state that a party claiming damages pursuant to Utah's Uniform Trade Secrets Act[3] must show the damages were cause by the misappropriation.  Again, Defendants are stating Plaintiff must prove causation through its damages expert. The law expressly states the *damages expert should assume liability* – the opposite of Defendants' position.  *Advanced Recovery Sys., LLC v. Am. Agencies, LLC,* No. 2:13-CV-283DAK, 2017 U.S. Dist. LEXIS 32213, at *20-21 (D. Utah Mar. 6, 2017).  The MDD Report is being offered as an affirmative *damages* report.  The damages report will only come into play, if and when the Plaintiff establishes liability of the Defendants.  If that showing is made, Mr. James Harrington, in the MDD Report, has calculated the damages.  Under these circumstances *an assumption of liability by a damages expert has been explicitly recognized in the Tenth Circuit.  Advanced Recovery Sys., LLC,* 2017 U.S. Dist. LEXIS 32213, at *20-21.  A challenge to expert testimony was denied in in similar case. *Critical Nurse Staffing v. Four Corners Health Care,* No. 2:13-CV-646 TS, 2016 U.S. Dist. LEXIS 61903 (D. Utah May 10, 2016).  *Advanced Recovery Sys., LLC,* 2017 U.S. Dist. LEXIS 32213, at *20-21, establishes the necessity of an expert to assume liability by stating,

> "In addition, Defendants argue that Hoffman's opinion as to copyrightdamages is beyond the scope of his report and he should be precluded from testifying as to those damages. However, Hoffman is not attempting to be an expert on the legal cause of action. He is a damages expert. *It is not the role of an expert witness to draw conclusions about the causation of damages.* The expert bases a calculation of damages on an assumption that counsel provides. Counsel and fact witnesses have to persuade a jury to find liability.  *The damages expert crunches the numbers based on*

---

[3] Plaintiff does not make a claim under the Utah Uniform Trade Secrets Act, but pursuant to the Colorado Uniform Trade Secrets Act.  Regardless, Defendants are incorrect as to a damages expert's assumption of liability.

9

an assumption of liability." *Advanced Recovery Sys., LLC v. Am. Agencies, LLC,* No. 2:13-CV-283DAK, 2017 U.S. Dist. LEXIS 32213, at *20-21 (D. Utah Mar. 6, 2017)(*emphasis added*).

17.     Hence, Defendants are incorrect as to Plaintiff's affirmative expert's assumption of liability, as it is appropriate for a damages expert to assume liability. *Id.* The assumption of liability is justified by the facts that were examined. *See* MDD Damages Report at pgs. 3-6. Thus, Defendants' argument is erroneous and Defendants' further analysis of assumption of liability falls apart.

### C.     Plaintiff's Affirmative MDD Damages Report Correctly Divides Damages into Three Categories.

18.     Defendants incorrectly attempt to state again there is no evidence for Mr. James Harrington to formulate three different groups of damages. Defendants' Motion at p. 7. The MDD Report identifies the description of the trade secrets and creates three categories of claims. MDD Report at pgs. 4-11. The MDD Report notes that Defendant CPL's services offered and Defendant CPL's website is practically identical to the services and website of ASI. Both CPL and ASI compete in the same area of business. They are both located in Jefferson County, Colorado. MDD states that it ascertained the description of the claimed trade secrets in the complaint and compared them to services provided by Defendant CPL to customers. MDD Report at pgs. 6-8.

19.     The MDD report identifies the trade secrets as follows:

a) ASI customer lists and associated service and product pricing data.

b) Supplier, cost, and pricing information on stocking fish sold to ASI customers.

c) ASI proprietary model used to assist in assessing and treating customer ponds/lakes for optimum performance. The model, referred to as ASI's "Sysbid"

10

template, considers specific water body conditions and variables allowing ASI to provide consistent and optimal water treatment to its customers. MDD Report at p.7.

20. Mr. James Harrington employs the *unjust enrichment theory* as specifically allowed by the Defend Trade Secrets Act. U.S.C.S. § 1836(b)(3)(B)(i)(II). Defendants' Motion attempts to improperly ignore the affirmative expert theory of unjust enrichment, which would, by its very nature, calculate accused ill-received gains and then defendants would show offsets, if any. However, Defendants' Motion insists on the legal determination of the definition of trade secrets and the proof of causation, which, are both outside an expert's purview in a trade secrets case as discussed *supra* at ¶ 16 and *infra* at ¶ 23.

21. The *first category* is based upon the identity of ASI customers that formerly were serviced by ASI who are now CPL customers. This was done by reviewing customer names, company names, addresses, contact names and billing addresses. This large first category directly compared the customer list of Plaintiff ASI and Defendant CPL as shown in Attachment 111. This is analyzed on Attachment 141. It consists of 14 pages of exhibits that show remarkable similarity of Plaintiff ASI customer names, billing information, physical address and contact information when compared to Defendant CPL proprietary customer list. It shows a large number (appx. 38%) of Defendant CPL customers were formerly serviced by Plaintiff ASI. MDD Report, p. 11, ¶¶ 30-31. This portion of the report is supported by 14 pages of detailed analysis at MDD Report–Attachment 141, pgs. 1-14. This detailed report shows exactly the customers of ASI which were "taken" by Defendants. Defendants erroneously state

11

there is a lack of foundation for this calculation based on Defendants' incorrect belief that the damages expert must not assume liability discussed *supra* at ¶¶ 16-17. Defendants claim that they cannot tell who made the determination that these customers were taken by Defendant CPL and upon what evidence they relied. The MDD Report explains how the Unjust Enrichment-Profit Disgorgement was made on pages 10-12. MDD Report at pgs. 10-12. Defendants falsely accuse Plaintiff and/or its counsel of instructing Mr. James Harrington as to the creation of the three categories in the MDD Report. Defendants' Motion at pg. 6. Mr. Harrington says *that he conducted a comprehensive analysis* of Defendant CPL's and Plaintiff ASI's sales data. MDD Report at p. 11 ¶ 30. Defendants simply ignore the plentitude of relevant, reliable facts and data relied upon in forming the three categories pursuant to the statutorily authorized unjust enrichment theory of damages. Defendants in fact provided the names of the Defendant CPL's customers to Plaintiff via Court Order. *See* ECF No. 53. Hence, all information MDD relied upon regarding the nature of services, names, addresses, and invoice amounts of Defendant CPL are presumed reliable and relevant per the Court. *Id*.

22. Defendants claim that there was no explanation of why the taking of customers was wrongful. This too is mistaken. Beginning on paragraph 14 of the MDD Report, Mr. Harrington recites his review of the complaint alleging the misappropriation of the trade secret materials by Sims, the description of the trade secrets, how they were wrongfully used for the benefit of Defendants, and the resulting damage to Plaintiff. MDD Report at pgs. 6-8. The takings were wrongful as demonstrated by the

filing of criminal charges against Defendant Sims, his plea of guilty, and the large volume of digital forensic evidence in the Cyopsis, Vestige, and ArcherHall reports.

23. The *second category* were not Plaintiff ASI's customers but are Defendant CPL' customers who were provided service by Defendant CPL. The invoices showed use of Plaintiff ASI's proprietary methods or processes in order to generate revenue. This category also shows the damages caused by Defendants to Plaintiff's detriment using Plaintiff's misappropriated trade secrets. Defendants assume, incorrectly, that Plaintiff's damages expert must show causation before assuming liability. Furthermore, Defendant ignores the categories of "Fish Stock" and "Water Analysis/Treatment", which if the full MDD Report is read, encapsulate the description of Plaintiff's trade secrets. Defendant CPL's description of services in its approximate 600 invoices was relied upon by Mr. James Harrington to determine the second category. MDD Report at p. 11 ¶¶ 32-33, Attachments 120, 121. Defendants also argue that Mr. James Harrington should determine causation and make a legal determination as to what are legally protected trade secrets. Mr. Harrington was tendered as an affirmative damage expert and cannot opine on causation/liability. *Advanced Recovery Sys., LLC v. Am. Agencies, LLC,* No. 2:13-CV-283DAK, 2017 U.S. Dist. LEXIS 32213, at *20-21 (D. Utah Mar. 6, 2017). Mr. James Harrington is prevented from making a legal determination as to what is a legally protected trade secret. Even an expert who is qualified in a specific field, may not render legal opinions. "…(W)hen providing such testimony, "an expert witness is prohibited from rendering a legal opinion." *United States v. Xue*, 597 F. Supp. 3d 759, 772 (E.D. Pa. 2022); citing *Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 217 (3d Cir. 2006). *Xue*, 597 F. Supp. 3d. at 772 states that an

13

expert *cannot* conclude what is a "trade secret" as this is a legal conclusion for the trier of fact's determination. See *Xue*, 597 F. Supp. 3d at 772. See also *Skycam, Inc. v. Bennett,* No. 09-CV-294-GKF-FHM, 2011 U.S. Dist. LEXIS 68725, at *16, 2011 WL 2551188 (N.D. Okla. June 27, 2011).

24. The *third category* are customers who could not be traced to Plaintiff ASI. This third category was created by Mr. James Harrington as tracing by Plaintiff's proprietary customer list of same client names, or services that could only be offered by use of Plaintiff's misappropriated trade secrets could not be directly established.

25. Defendants claim there is no evidentiary basis for the three categorical descriptions of Plaintiff's damages in the affirmative MDD Report. However, as discussed, Defendants simply ignore the lists of disclosed evidence on Attachment B used by Mr. James Harrington's pursuant to the unjust enrichment theory. Furthermore, Defendants are incorrect in their false assumption that Mr. James Harrington, as a damages expert, must prove the existence of causation and the legal status of claimed trade secrets. These false assumptions do not support Defendants' position to strike the MDD Report for lack of evidentiary evidence, but in fact, bolster Plaintiff's position that if and when proved, the statutorily allowed damages calculation will help the trier of fact and is based on a reliable foundation of both Plaintiff's financials and Defendants' financials and other documents described and relied upon by Mr. James Harrington in the MDD Report.

### D. Plaintiff's Affirmative MDD Damages is Based on Sound Methodology and Statutorily Recognized.

14

26.     Defendants claim that Mr. James Harringtons' methodology is not sound. A large thrust of Defendants' attempts to discredit Mr. James Harringtons' methodology rests on the alternative theories and attribution of damages to those theories by Defendants' rebuttal expert Dr. Roberts.  Defendants' Motion pgs. 8-10.  In a trade secrets case, when faced with an objection that the expert damages did not attribute damage to other causes than those stated is a matter of credibility, and a motion to strike pursuant to Fed. R. Civ P. 702 should be denied.  *Biomimetics v. Empirical Labs*, Civil Action No. 16-cv-01162-KMT, 2018 U.S. Dist. LEXIS 240092 (D. Colo. Dec. 31, 2018).  Here, attribution of damages to other causes was not within the affirmative report of Mr. James Harrington and is a matter of credibility which is for the trier of fact and not an argument for a motion to strike pursuant to Fed. R. Civ. P. 702.  *See id*. Defendants' claim of unsound methodology is factually and legally incorrect as discussed *infra* ¶¶ 3-25.

## Conclusion

26.     Defendants have incorrectly interpreted the law and fact in their Motion. Defendants incorrectly assert that Plaintiff's damage expert may not assume liability when in fact the Tenth Circuit *requires* a damages expert *to assume* liability. Defendants also incorrectly state that Plaintiff's damage expert must opine as to the legal existence of the trade secrets at issue, when in fact such opinion regarding the legal existence of a trade secret is for the determination of the trier of fact and specifically excluded from a damages expert's opinion.  Because of erroneous legal conclusions, Defendants conclude Plaintiff's affirmative damages expert, Mr. James Harrington, should be precluded.  Defendants' claims of lack of reliability and unsound

15

methodology fall short because of the sufficient facts relied upon, the statutorily authorized methodology employed, and the correct application of the facts and evidence by the expert Mr. James Harrington. For the above articulated reasons, Plaintiff moves this Court to deny Defendants' Motion.

Respectfully submitted on August 11, 2025.

*s/ John Patrick Schmitz, Esq.*
John Patrick Schmitz, Esq.
Law Offices of John P. Schmitz, P.C.
1001 Bannock Street, Suite #426
Denver, CO 80204
Telephone: (303) 219-9430
E-mail: john@schmitzlegal.com
Attorney for Plaintiff

**Certificate of Service**

I hereby certify that on August 11, 2025, I filed the foregoing: Plaintiff Aqua Sierra, Inc.'s PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON AS EXPERT WITNESS AT TRIAL PURSUANT TO FED. R. EVID. 702 via CM/ECF which forwarded the same to the following Counsel for all Defendants at the following email address.

kfalkenstein@coloradolawyers.com

    Ken Falkenstein, Esq.
    Irwin Fraley, PLLC
    6377 S. Revere Parkway, Suite 400
    Centennial, Colorado 80111 USA
    303-999-9000 Tel
    303-999-9001 Fax
    Attorney for all Defendants

    *s/ John Patrick Schmitz, Esq.*
    John Patrick Schmitz, Esq.
    Law Offices of John P. Schmitz, P.C.
    1001 Bannock Street, Suite #426
    Denver, CO 80204
    Telephone: (303) 219-9430