IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-3394-RMR-NRN

AQUA SIERRA, INC., a Colorado Corporation

Plaintiff,

v.

COLORADO POND AND LAKE, LLC, *et al.*,

Defendants.

---

**DEFENDANTS' REPLY TO [100] PLAINTIFF'S RESPONSE TO MOTION TO PRECLUDE PLAINTIFF FROM CALLING JAMES HARRINGTON AS EXPERT WITNESSES AT TRIAL PURSUANT TO FED. R. EVID. 702**

---

Defendants Colorado Pond and Lake LLC, Silas Sims, Philip Hirshman, and Noel Browning, by and through their undersigned attorneys, reply to [100] Plaintiff's Response ("Response") to Defendants' Motion ("Motion") to Preclude Plaintiff From Calling James Harrington as Expert Witness at Trial Pursuant to Fed. R. Evid. 702 as follows:

Under Fed. R. Evid. 702, in order for an expert witness' opinions to be admissible, they must be "based on sufficient facts or data" and must be "the product of reliable principles and methods." In the present case, James Harrington's opinions rest on *no* evidentiary foundation whatsoever and are the product of deeply flawed methodology.

First, as discussed in more detail in Defendants' Reply to [99] Plaintiff's Response to [81] Defendants' Rule 26 Motion, Plaintiff's expert James Harrington identified the materials that he reviewed only by Bates stamp numbers with no substantive identification of any of those documents. ([93] Harrington Report, Attachment B). Although Plaintiff's Financial Reports could

be identified from those Bates stamp numbers, the remaining more than 1,150 pages listed by ASI Bates stamp numbers only could not be identified at all. In [99] Plaintiff's Response to [81] Defendants' Rule 26 Motion, Plaintiff revealed *for the first time ever* – and months after the deadline for such disclosures - that three of those pages were ASI's Profit and Loss Statement, but Plaintiff *still* has not identified the remaining more than 1,150 pages of documents that Mr. Harrington says he reviewed.[1]

Next, although Plaintiff, in its Response, offers a lengthy explanation of *what* Mr. Harrington did in his various charts, Plaintiff cannot refute that he cites no *evidentiary sources* for any of the information in any of those charts. So, he might have listed various customers in various categories, but he cites no sources for where he got any customer information.

Furthermore, although *Plaintiff* provides an explanation in his Response as to how and why Mr. Harrington placed certain customers in certain lists and categories, *Mr. Harrington himself does not do so anywhere in his report.* Plaintiff is not the expert, and its Response to Defendants' Motion herein – filed months after the deadline for expert disclosures and reports - is not its Fed. R. Civ. P. 26(a)(2)(B) expert report. Defendants are not required to guess or infer the expert's methodology from his charts. The expert is required to explain his methodology, data, analysis, and opinions in his report. Mr. Harrington failed to do so, and his failure cannot be cured by the non-expert Plaintiff (or its counsel) doing so in a legal brief.

Plaintiff next argues that this court cannot disqualify an expert for calculating unjust enrichment damages by assuming - without any basis - that *all* of CPL's revenues were the result

---

[1] Plaintiff claimed in its [99] Response to Defendants' [82] Rule 26 Motion that the remaining pages were CPL corporate documents, but since those documents had *CPL* Bates stamp numbers on them and Mr. Harrington said in his report that he reviewed only documents with *ASI* Bates stamp numbers, that explanation by Plaintiff cannot be correct. This is discussed in more detail in Defendants' Reply to Plaintiff's Response to Defendants' Rule 26 Motion filed concurrently.

of Defendants' alleged misappropriations without even considering any other sources for those revenues. Plaintiff is incorrect in this assertion.

Under the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-104(1), the owner of a misappropriated trade secret may recover for "the actual loss caused by [the use of the trade secret]" as well as any unjust enrichment that the defendant obtained as a result of that use. Thus, the statute requires the party asserting the claim of misappropriation of a trade secret to establish that its damages or unjust enrichment *were "caused by the misappropriation."*

"Not all enrichment is unjust." *Mattel, Inc. v. MGA Enter., Inc.*, 2011 WL 836418, at *2 (C.D. Cal. Mar. 4, 2011). "A person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust." Restatement of Restitution, section 1, comment a (emphasis added). "Unjust enrichment from the use of [a] trade secret does not include the profits generated by [a defendant's] hard work, creativity, and legitimate efforts . . . . It is not unjust for a defendant . . . to retain the fruits of its own labors or legitimate efforts. To the contrary, it is not equitable to force [a defendant] to hand over its sweat equity." *Mattel, Inc.*, 2011 WL 836418, at *2.

James Harrington, in calculating Defendant's alleged unjust enrichment, wrongfully assumed *all* of their revenues to be unjust enrichment. In other words, he assumed without any basis that all of their "enrichment" was "unjust" *without making any inquiry whatsoever into how CPL earned those revenues*. Mr. Harrington failed to consider competitive pricing strategies, service quality, and brand reputation – all of which influence customer decisions, *and none of which are unjust*. He failed to consider customer migration, which is, as Defendants' expert Dr. Wade Roberts put it, "a normal feature of a competitive industry, where firms naturally gain and lose customers based on pricing, service offerings, and overall market positioning." ([94] Roberts

3

Report at 36). As Dr. Roberts noted (and Mr. Harrington failed to factor into his calculations), *ASI's own financial records* indicate that per-customer revenue *increased* post-2021, undermining the claim that CPL's entry resulted in widespread customer losses." (Roberts Report at 36; emphasis added). This demonstrates *as a matter of law* that at least much, if not all, of CPL's revenues were derived in ways that were not "unjust."[2]

Mr. Harrington also failed to consider CPL's operating costs. As Dr. Roberts wrote in his report, "Standard economic damage models require that *net profits* (not gross revenue) serve as the basis for damage estimates. Companies experience significant costs in acquiring customers, marketing, and operational costs that should be deducted to arrive at a true measure of financial gains (assuming liability). *The failure to consider these expenses grossly inflates the damages estimate and does not meet the standards of forensic economic analysis.*" (Roberts Report at 36-37; emphasis added). Mr. Harrington's use of *gross* revenues that failed to factor for operating costs was a basic and elementary methodological error that also caused his results and conclusions to be entirely erroneous.

Plaintiff argues that these are matters for a jury to decide, but the U.S. Supreme Court was clear in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) that it is the responsibility of the *court* to act as gatekeeper to keep fundamentally flawed and erroneous expert evidence from being presented at trial. James Harrington failed to cite data and evidence to support his analysis and calculations in his report, and his methodology, as a matter of law, was fundamentally flawed, erroneous, and inconsistent with both the damages permitted under the Colorado Uniform Trade Secrets Act and the standards of forensic damages experts (regardless of

---

[2] Defendants maintain and have each testified under oath in their respective depositions that they did not commit *any* of the tortious conduct of which they are accused in this case, including any misappropriation of trade secrets, and it is Defendants' position that *all* of their earnings and revenues have been proper and "just."

whether the expert is an accountant or economist). James Harrington's report failed to meet the standards of Fed. R. Evid. 702, and he should be precluded from testifying at trial.

Respectfully submitted on August 25, 2025.

By: s/ Ken Falkenstein
Ken Falkenstein, Atty. Reg. No. 52307
Irwin Fraley, PLLC
8377 S. Revere Parkway, Suite 400
Centennial, CO 80111
Telephone: 303-999-9000
FAX: 303-999-9001
Email: kfalkenstein@coloradolawyers.com
Attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

s/ Ken Falkenstein
Ken Falkenstein